[No. 33-40530-2. Division Two. March 2, 1970.]

Tucci & Sons, Inc., *Appellant,* v. Carl T. Madsen, Inc.,
*Respondent.*

*Rush, Lynch & Wolf* and *W. Gerald Lynch,* for appellant.

*Hager & Young* and *Wallace B. Hager,* for respondent.

PETRIE, J.—Plaintiff Tucci & Sons, Inc. (Tucci) held a general contract for certain construction work at Fort Lewis, Washington. On May 3, 1963 defendant Carl T. Madsen, Inc. (Madsen) entered into a subcontract with plaintiff whereby defendant was to perform certain electrical installations. This subcontract was on a form generally used by the Tacoma Chapter of Associated General Contractors.

As a part of the general terms of this subcontract, defendant (subcontractor) agreed:

> "(k) To indemnify and save harmless the CONTRACTOR from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the SUBCONTRACTOR's performance of this SUBCONTRACT."

On December 6, 1963, one of defendant's workmen, John G. McEwen, Jr., sustained an injury in the course of his employment on the Fort Lewis project when an electrical utility pole on which he was working fell to the ground. McEwen filed an action against plaintiff herein alleging that his injury had been caused by plaintiff's negligence. Relying upon the indemnity provision of the subcontract set forth above, Tucci tendered the defense of the McEwen action to defendants herein, Madsen. Madsen refused to defend the McEwen action; and, although initially joined as an additional party, Madsen was subsequently dismissed without prejudice.

McEwen obtained a judgment against Tucci which was affirmed on appeal to the Supreme Court. *McEwen v. Tucci & Sons, Inc.,* 71 Wn.2d 539, 429 P.2d 879 (1967). Tucci thereupon brought this action against Madsen seeking in-

demnity for the total amount of the judgment and costs it had been required to pay as a result of the McEwen action and appeal. Tucci does not contend that Madsen was negligent. We must interpret this contract under the acknowledged fact that only Tucci, the indemnitee, negligently caused McEwen's injury. Madsen defended the case at bar by denying that, under the facts set forth, the indemnity language of the subcontract imposed an obligation upon him, and also by asserting that, inasmuch as McEwen was one of his employees entitled to workmen's compensation (and therefore prohibited from suing his employer directly), he, McEwen, should not be permitted to do indirectly what he is prohibited from doing directly.

Under this state of the record, both parties filed motions for summary judgment. The trial court denied plaintiff's motion, but granted defendant's motion and dismissed the action with prejudice on the grounds that the indemnity clause "does not impose an obligation on defendant to indemnify plaintiff as prayed for in the complaint, or at all, under the facts of this case." Plaintiff has appealed, assigning error to the court's denial of his motion, the granting of defendant's motion and dismissing the action.

We examine first the trial court's determination that the indemnity clause did not impose an obligation upon the defendant under the agreed facts.

■ Defendant's first contention in support of non-liability is based upon his understanding of the meaning of the phrase "arising out of, in connection with, or incident to the subcontractor's *performance* . . .". He contends that since this is a "construction contract" under which the plaintiff general contractor is responsible to the owner for all work, including that of the subcontractor, the above phraseology limits his indemnity to quality of the work performed. We prefer to interpret the contract so as to give effective operation of all the language in the ordinary and usual meaning of the words used. *Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964). Defend-

ant's employee at the time of injury was engaged in performing work under the subcontract. He was atop a utility pole installing the electrical system. Had he not been so engaged, he would not have been injured. His injuries, and plaintiff's subsequent loss arose out of, in connection with, or incidental to defendant's performance of the subcontract.

■ Defendant contends that, in any event, there is no language used in the contract to warrant a conclusion that he has agreed to indemnify with respect to plaintiff's *sole* negligence. It is in this sense that he would distinguish this case from *Cope v. J. K. Campbell & Associates, Ltd.*, 71 Wn.2d 453, 429 P.2d 124 (1967). However, we need not explore whether the distinction is truly valid or merely superficial. As we view this indemnity clause, it would be most difficult to assemble words which describe a more comprehensive and all-inclusive intent by the indemnitor to indemnify the indemnitee for all losses, suffered by the indemnitee, "of whatsoever kind or nature," so long as they had some connection with the indemnitor's performance of the subcontract. An intent to indemnify for the indemnitee's negligence need not be explicitly set forth in a contract.

Interpreting a similarly "sweeping and all-embracing" clause, the Supreme Court has held:

> In our opinion, there can be no doubt but that a loss, damage, or injury occasioned by negligence is clearly within the following language of the indemnity provision of the management contract; " . . . all loss, damage or injury to any person . . . arising from any cause or for any reason . . . in or about said premises."

*Griffiths v. Henry Broderick, Inc.*, 27 Wn.2d 901, 906, 182 P.2d 18 (1947).

Absent some recognized public policy prohibiting such indemnification clauses, we hold that a subcontractor may, and in this case he did, voluntarily and enforceably agree to indemnify a contractor for losses sustained by his indemnitee even though such loss be occasioned solely by the negligence of such indemnitee.

■■ Defendant has called our attention to such a declaration of public policy embraced in RCW 4.24.115. This legislatively declared prohibition was enacted in 1967, several years after the parties executed the agreement herein being examined. Laws of 1967, Ex. Ses., ch. 46 § 2, p. 1602. It is substantive in nature and clearly cannot be applied retroactively, at least in the absence of a clearly expressed intent to the contrary. *In re Cascade Fixture Co.*, 8 Wn.2d 263, 111 P.2d 991 (1941).

We turn now to defendant's other major contention—whether or not the workmen's compensation act prevents plaintiff from maintaining his present cause of action. The argument appears to be that the workmen's compensation act abolished all civil causes of action for personal injuries by a workman against his employer; hence to permit recovery over by plaintiff herein would require the employer to respond in civil damages for injuries sustained by one of his workmen, which is specifically proscribed by statute. In order to approach this aspect of the appeal, some limited discussion of the history of workmen's compensation laws seems appropriate.

Prior to the enactment of workmen's compensation laws a workman could sue his employer for injuries resulting from the employer's negligence; but the employer had recourse to the common law affirmative defenses of contributory negligence, assumption of risk, and the fellow servant rule. This balancing of "fault" provided a neat set of rules well-suited to an essentially agricultural economy. The advent of the industrial revolution—and its consequent increase in work-connected injuries whose true causes were frequently unascertainable—soon rendered intolerable such an attempted balancing of fault in an ordered society. Legislative restructuring of the law became mandatory. Workmen's compensation laws required employers to compensate employees for all non-intentional injuries regardless of fault, prohibited employees from seeking common law damages from their employers, but substituted what hopefully had been described as speedy and certain compensa-

tion to injured workmen. Thus, both employer and employee received some benefits and lost some rights under the new system.

When each state adopted a workmen's compensation program, an "exclusive jurisdiction" clause was inserted in the act so as to ensure that the employer's liability would be limited within the confines of the newly created structure. For examples of such "exclusive jurisdiction" clauses see, *Contribution and Indemnity: The Effect of Workmen's Compensation Acts,* 42 Va. L. Rev. 959 (1956). Washington's law was no exception. Laws of 1911, ch. 74, § 1, containing such an "exclusive jurisdiction" clause, remains substantially intact to this day, was re-enacted in 1961, and is now codified as RCW 51.04.010.[1]

 Because of the presence of these "exclusive jurisdiction" clauses, the courts of the several jurisdictions have struggled with the conflict created when such clauses are placed in juxtaposition with a third party's right to *contribution* from a negligent employer, but *not* when such clauses are placed in juxtaposition with a right based upon *indemnity* required by contract, expressed or implied, and whether or not the employer was negligent.

Invariably, when a contractual right of indemnity is the

---

[1]"The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that *all phases of the premises are withdrawn from private controversy,* and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end *all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished,* except as in this title provided." (Italics ours.)

basis of the cause of action, the courts permit recovery by a third party from an injured workman's employer simply because the cause of action arises out of an *independently created* contractual right which is totally independent of the exclusive jurisdiction provisions of a workmen's compensation act, so long as the compensation act itself does not prohibit such agreements. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232 (1956); *Umnus v. Wisconsin Public Service Corp.*, 260 Wis. 433, 51 N.W.2d 42 (1952); *Moroni v. Intrusion-Prepakt, Inc.*, 24 Ill. App. 2d 534, 165 N.E.2d 346 (1960); *Yearicks v. City of Wildwood*, 23 N.J. Super. 379, 92 A.2d 873 (1952).

In the state of Washington, however, we are confronted with an additional statute, RCW 51.04.060, which provides:

> No employer or workman shall exempt himself from the burden or waive the benefits of this title by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void.

It seems eminently clear that the foregoing statute, embodied in the original act of 1911 (Laws of 1911, ch. 74, § 11), imposes a constitutionally permissible limitation upon an employer's capacity to contract. *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 P. 1101 (1911).

Plaintiff, Tucci, has asserted simply that Madsen, the employer, has not exempted himself from a burden of the workmen's compensation act; rather he has voluntarily assumed an additional burden supported by a valid consideration. With this we can readily agree. However, we are concerned with whether or not the employer has—by this indemnity clause in the contract—invalidly attempted to waive a benefit to which he is entitled under the act.

RCW 51.04.060 does appear to declare that: "No *employer* . . . shall . . . waive the benefits of this title . . . " as well as "No . . . *workman* shall . . . waive the benefits of this title . . . ". We know of no definitive opinion of our Supreme Court answering

the question of whether or not an employer may waive the benefits of the workmen's compensation act. We turn, therefore, to other jurisdictions for such assistance and guidance as they may provide.

Statutory proscriptions against waiver of benefits, when they exist, in most other states, are expressly limited to a workman's attempted waiver of benefits. Typical of such statutes is: "No agreement by an employe to waive his rights to compensation under this act shall be valid . . . ". Mich. Stats. Ann. § 17.170.

However, we note that the West Virginia statute is identical to our RCW 51.04.060. See W. Va. Code, ch. 23, art. 2 § 7. In *Grady v. Appalachian Elec. Power Co.*, 126 W. Va. 546, 29 S.E.2d 878 (1944), the Supreme Court of Appeals of West Virginia refused to declare pro tanto void an alleged contract in which an employer promised to pay an injured workman $70 per month for the rest of his life (after ceasing employment) in consideration of the workman's continuing employment for an indefinite period in the future. The employer had taken the position, in part, that such a contract should be declared void because it constituted a waiver by the employer to the benefit granted to it by the workmen's compensation act. The court declared that the statute prohibiting waiver of benefits was not intended to prevent an employer from making special provisions for an injured employee beyond those which the employee might receive under the workmen's compensation act.

Similarly, a statute of the state of Ohio[2] specifically de-

---

[2]Section 4123.82, Revised Code of Ohio, provides in part as follows:
"(A) all contracts and agreements are void which undertake to indemnify or insure an employer against loss or liability for the payment of compensation to workmen or their dependents for death, injury, or occupational disease occasioned in the course of such workmen's employment, or which provide that the insurer shall pay such compensation, or which indemnify the employer against damages when the injury, disease, or death arises from the failure to comply with any lawful requirement for the protection of the lives, health, and safety of employees, or when the same is occasioned by the willful act of the employer or any of his officers or agents, or by which it is agreed that the insurer shall pay any such damages."

clared void all contracts which undertake to indemnify an employer against loss for the payment of compensation to workmen injured in the course of employment. In *Republic Steel Corp. v. Glaros,* 12 Ohio App. 2d 29, 230 N.E.2d 667 (1967), the Ohio Court of Appeals refused to declare void an indemnity contract which required the indemnitee subcontractor to indemnify the general contractor for losses paid by the general contractor to an injured workman of the subcontractor.

We agree with the limited application of the statutes expressed by the West Virginia and Ohio courts. We hold, therefore, that at the time of the execution of this contract neither RCW 51.04.010 nor RCW 51.04.060, nor any other law, prohibited an employer from entering into an enforceable indemnity agreement which obligated him to indemnify another employer for losses paid by such other employer to an injured workman of the first employer.

Therefore, it was error for the trial court to have granted defendant's motion for summary judgment. Furthermore, the parties having heretofore stipulated as to the amount of losses paid by plaintiff, Tucci, the trial court should have granted the plaintiff's motion for summary judgment in the amount of losses stipulated.

The judgment appealed from is reversed with instruction to enter judgment in accordance herewith.

ARMSTRONG, C. J., and PEARSON, J., concur.