[No. 46769.   En Banc.   August 21, 1980.]

RONALD G. REDFORD, ET AL, *Plaintiffs*, v. THE CITY OF SEATTLE, ET AL, *Defendants*, JORGENSEN STEEL COMPANY, *Respondent*, WAYNE JACOBSON, ET AL, *Petitioners*.

*Reed, McClure, Moceri & Thonn, P.S.,* by *William R. Hickman,* for petitioners.

*Stafford, Frey & Mertel,* by *A. Richard Dykstra,* for respondent.

HOROWITZ, J.—This case concerns an action brought on a written indemnity agreement in which a contractor agreed

to indemnify a third party landowner from liability not caused by the third party's negligence or wilful misconduct. When the contractor's employee was injured while working on the third party's property and the third party settled and paid a money judgment on the employee's claims against it, the contractor denied liability under the indemnity agreement. We hold the third party can enforce the indemnity agreement against the contractor.

## I

Jacobson & Sons (Jacobson) contracted with Jorgensen Steel Company (Jorgensen) to paint pollution control devices on the roof of Jorgensen's plant. In accepting the contract to perform services, Wayne Jacobson, owner of Jacobson, signed a "Release Agreement" which had been prepared and presented to him by Jorgensen. The release provided, in relevant part, that:

> 1. Contractor assumes the risk of all damage, loss, cost and expense, and agrees to indemnify and hold harmless Jorgensen . . . from and against any and all liability . . . which may accrue to or be sustained by Jorgensen . . . on account of any claim, suit or action made or brought against Jorgensen . . . for the death of or injury to persons or destruction of property involving Contractor, its employees . . . sustained in connection with performance of the Purchase Order . . . *except negligence and willful misconduct of Jorgensen* or its employees acting within the scope of their employment. . . .

(Italics ours.)

While performing the contract in the employ of Jacobson, painter Ronald Redford was shocked and severely injured because the long–handled aluminum paint roller he was using came in contact with a high–voltage electrical line overhanging the pollution control devices on the roof of Jorgensen's plant.

Redford, his wife, and his children sued Jorgensen Steel and several other entities, including the City of Seattle. As to Jorgensen, Redford alleged that the firm had failed to warn Redford of the extremely dangerous condition created

by the relationship of the pollution control devices and the power line.

Jorgensen joined Jacobson as third party defendant, relying on the release agreement and on common law indemnity concepts. Jacobson denied the applicability of the agreement and raised the bar of the Washington industrial insurance act, RCW Title 51, which limits the liability of employers to their employees and takes jurisdiction from the courts in workers' compensation cases.

Redford's claim was settled by payment to him of $690,000, of which $490,840.63 was contributed by Jorgensen and the balance by the City of Seattle and Seattle City Light. Jorgensen then moved for partial summary judgment on the issue of whether the release agreement made Jacobson liable to Jorgensen for the damages to Redford not caused by Jorgensen's sole negligence. For purposes of summary judgment, several basic facts were stipulated by the parties:

—Jorgensen was negligent, which negligence was a proximate cause of Redford's injuries.

—Jacobson was negligent, which negligence was a proximate cause of Redford's injuries.

—The indemnity agreement set forth above was in existence between Jorgensen and Jacobson and was applicable to the incident causing Redford's injuries.

—Redford was acting within the scope of his employment with Jacobson at the time of his injury.

The King County Superior Court granted partial summary judgment, holding the release agreement gave Jorgensen a right of indemnity against Jacobson except for that portion of Redford's damages attributable to Jorgensen's negligence or wilful misconduct. The trial court further ordered the case to jury trial only to determine "what portion of the causal negligence is Jorgensen's and is to be deducted" from the amount due from Jacobson under the indemnity agreement. The Court of Appeals, Division One, affirmed the partial summary judgment. We granted Jacobson's petition for review.

The question raised is whether a negligent third party can obtain indemnity from an injured employee's employer under a written indemnification agreement between the third party and the employer. Jacobson's objections to enforcement of the release agreement present the following issues:

1. Is indemnification by the employer prohibited by exclusive remedy provisions of the Washington industrial insurance act?

2. Is indemnification by the employer prohibited by the common law limitations on contribution between joint tort-feasors?

We consider first the general law of indemnity agreements before taking up the specific issues raised by its application to this case.

## II

Indemnity agreements of the sort entered into by Jorgensen and Jacobson are enforced as a matter of course in most factual situations. In this state, the legislature has limited the permissible reach of such contracts by preventing an indemnitee such as Jorgensen from recovering damages resulting from its "sole negligence" in construction cases. RCW 4.24.115. However, the release agreement considered here excepts from its provisions Jorgensen's "negligence and willful misconduct" and thus is not violative of the statute.

Jacobson argues, however, the release agreement, when considered in light of RCW 4.24.115, must be interpreted in a manner which prevents indemnification in *any* case in which Jorgensen's negligence has in any way contributed to the loss. Although Jacobson makes a persuasive argument that such a limited agreement would not be without effect because of potential liability for breach of nondelegable duties, hazardous activity or products liability which would fall within its provisions, the language of the agreement

itself does not support his analysis. Jorgensen has adequately exempted its own "negligence and willful misconduct" from the agreement.

The release agreement is therefore enforceable unless its application is prohibited by some aspect of workers' compensation or common law damages law that as a matter of public policy would prevent this court from enforcing the agreement.

## A
### INDEMNIFICATION BY AN EMPLOYER

As Redford's employer, Jacobson is immune from suit in the courts *by Redford.* As stated in RCW 51.04.010:

> [A]ll civil actions and civil causes of action for such personal injuries [to workers] and all jurisdiction of the courts of the state over such causes [between workers and employers] are hereby abolished, except as in this title provided.

These "exclusive remedy" provisions of the workers' compensation law are supplemented by the "no waiver" requirements of RCW 51.04.060:

> No employer or worker shall exempt himself or herself from the burden or waive the benefits of this title by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void.

██ The courts of this state, however, correctly allow an employer to be bound by an indemnification agreement with a third party. *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970) (limited to written indemnification agreements only in *Olch v. Pacific Press & Shear Co.,* 19 Wn. App. 89, 573 P.2d 1355 (1978)); *Montoya v. Greenway Aluminum Co.,* 10 Wn. App. 630, 519 P.2d 22 (1974). The Washington industrial insurance act does not preclude third parties from enforcing written agreements by an employer to indemnify the third party from liability occasioned by injury to the employer's employee.

First, when a written indemnification agreement is enforced the liability is based on a contractual and not on an employment relationship between the employer and the third party. The overwhelming majority of courts that have considered the validity of indemnity agreements in light of exclusive remedy provisions of state workers' compensation acts agree that this distinction prevents the compensation schemes from prohibiting such voluntary agreements. "[T]he indemnity claim is by definition a separate legal cause, and, unlike the employer's contributory negligence, is not intertwined with the tortious incident itself". Thus, these express contractual obligations have created the "clearest exception to the exclusive–liability clause." 2A A. Larson, *Workmen's Compensation* § 76.41, p. 14–328 (1976).

Second, as the Court of Appeals concluded in *Tucci*, RCW 51.04.060, "the statute prohibiting waiver of benefits was not intended to prevent an employer from making special provisions for an injured employee". *Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra* at 1042–43. That the act was not intended to prevent an employer from making "special provisions" for his employee can be seen from the policies of the act, which are set forth in RCW 51.04.010. The statute mentions the "cost of the employer" at one point. However, it does so only with regard to the need for protection of *workers*:

> The remedy of the worker has been uncertain, slow and inadequate [under the common law]. . . . The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. . . . [T]herefore, . . . sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided . . .

Thus, the Washington industrial insurance act does not prevent the employer from contracting with a third party in a manner that creates the possibility of contractual liability for an employee's injuries that would be precluded as a matter of tort law by RCW 51.04.010 and .060.

Jacobson argues, however, that the analysis of *Tucci, Olch,* and *Montoya,* which we now adopt, is precluded by two recent cases of this court. We disagree.

Jacobson first asserts that *Tucci* was overruled by *Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 522–23, 527 P.2d 1115 (1974). *Tucci*'s holding that the employer can make "special provisions" for its employee, which we are concerned with here, however, was clearly not considered by this court in *Jones. Jones* merely limited the scope of such indemnification agreements to those cases in which some activity of the employer contributed to the injury. *Jones* was not concerned with the propriety of indemnity agreements under RCW 51.04.060.

Jacobson next asserts that this court's recent case of *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978), casts doubt on the reasoning of *Tucci.* In *Shoreline Concrete* the court held that the Washington industrial insurance act "abolishes judicial jurisdiction over *all* civil actions for personal injuries arising between employees and the employers":

> In effect, the Act "immunizes", from judicial jurisdiction, all tort actions which are premised upon the "fault" of the employer vis–a–vis the employee. . . .
> We thus hold that under the Act the courts have no jurisdiction over an action premised upon or necessarily involving this "immunized" area of tort law.

*Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 242. The language of *Shoreline Concrete* itself precludes its applicability to this case. *Shoreline Concrete* prevents only civil actions for "*tort* acts" arising "*between* employees and the employers." The opinion cites *Tucci, Montoya,* and *Olch* with approval as examples of cases in which "an employer voluntarily assumes an independent duty or obligation to the third party." *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 242. *Shoreline Concrete* is not intended to, and does not have, any effect on an action in contract for indemnification such as was brought by Jorgensen against Jacobson here.

The Washington industrial insurance act does not prevent the type of express indemnification agreement entered into by Jorgensen and Jacobson in this case. The release agreement is enforceable unless prohibited by some stricture against the allocation of loss contemplated by the parties' agreement.

## B
### "CONTRIBUTION" THROUGH INDEMNIFICATION

The Court of Appeals correctly noted that the indemnity agreement between Jorgensen and Jacobson allows a sort of contractual contribution. *Redford v. Seattle,* 24 Wn. App. 484, 492, 602 P.2d 717 (1979). The doctrine of contribution is intended to equitably distribute *"between* or *among* tort–feasors the responsibility for paying those damages suffered by the injured party." *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89 Wn.2d 847, 850, 576 P.2d 388 (1978). It allows one tort–feasor, against whom damages in favor of the injured party have been assessed, to look to another for reimbursement.

This court refused to adopt contribution as a matter of common law damages in *Wenatchee Wenoka Growers Ass'n v. Krack Corp., supra.* However, our rejection of the common law doctrine does not prevent us from honoring the agreement of private parties to allocate loss in a manner which may resemble contribution.

■ As a general rule, "[t]he courts will uphold whatever lawful agreement the parties made with each other." *Dix Steel Co. v. Miles Constr., Inc.,* 74 Wn.2d 114, 119, 443 P.2d 532 (1968). Unless the contract is illegal or violates public policy, the court will not interfere in the agreement of competent parties. *Coast Sash & Door Co. v. Strom Constr. Co.,* 65 Wn.2d 279, 281, 396 P.2d 803 (1964). The parties' indemnity agreement in this case was neither illegal nor against public policy.

■ No statute prevents the making of indemnity agreements which exclude the indemnitee's own negligence. *See*

RCW 4.24.115. As discussed above, the release agreement thus was not illegal.

In addition, it is clear that the courts of this state have not in the past considered such an agreement violative of public policy. *Jones* and *Tucci* upheld written partial indemnity contracts of the sort at issue here with no question as to their general validity as a matter of public policy. *Jones v. Strom Constr. Co., supra; Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra.* Parties often contract so that they, and not the common law, control the legal effect that will flow from an anticipated set of circumstances and thus the result will differ from that under the common law. *See Coast Sash & Door Co. v. Strom Constr. Co., supra* (enforcement of liquidated damage clause which assessed liability greater than that which would have occurred under the common law); *Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947) (enforcement of indemnity contract).

Such an agreement is enforceable in this case. Many of the considerations that prevented adoption of contribution as a matter of common law in *Wenatchee Wenoka* are not present here. The plaintiff's right to recovery has already been assured, the method of apportioning loss agreed to and the type of activities excluded from indemnity set forth. *Wenatchee Wenoka Growers Ass'n v. Krack Corp., supra* at 854. On the basis of the parties' contract, the determination of relative fault presents no factual difficulties not inherent in any comparative negligence case. Jacobson's agreement to indemnify Jorgensen from liability not resulting from Jorgensen's negligence does not violate the public policy of this state.

Enforcement of the agreement of Jacobson and Jorgensen now requires only a trial to determine what portion of Redford's injury was caused by Jorgensen's negligence or wilful misconduct and is thus under the release agreement excluded from indemnity by Jacobson. We must affirm the trial court's grant of partial summary judgment and the case must be remanded for trial according to the order

granting summary judgment to determine what portion of the damages was the result of Jorgensen's negligence.

It is so ordered.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACH-TENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied November 3, 1980.