[No. 50026–6.   En Banc.   July 5, 1984.]

STEVEN C. BROWN, *Plaintiff,* v. PRIME CONSTRUCTION Co., INC., *Appellant,* ACE ELECTRIC COMPANY CONTRACTORS & ENGINEERS, *Respondent.*

*Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal* and *Laurence R. Weatherly,* for appellant.

*Carney, Stephenson, Badley, Smith & Mueller,* by *R. Jack Stephenson* and *A. Richard Maloney,* for respondent.

BRACHTENBACH, J.—This case involves the validity of an indemnity provision in a contract between a general contractor and its subcontractor. Prime Construction Co., Inc. (Prime) was the general contractor for certain construction work at the Seattle Occupational Industrial Center (Owner). Prime subcontracted with Ace Electric Company Contractors and Engineers (Ace) for specified electrical work.

Plaintiff Brown, an employee of Ace, was injured on the job. He sued Prime and Thomas Industries, Inc., the manufacturer of a device being used by Brown at the time of his injury. The claim against Prime was based upon negligence; the claim against Thomas sounded in negligence and strict liability. Neither Brown nor Thomas is a party to this appeal.

Prime joined Ace as a third party defendant, relying on the indemnification provisions in both the Prime/Ace subcontract and the Prime/Owner main contract.

The subcontract contained the following clause:

(L) INDEMNIFICATION

The SUBCONTRACTOR agrees to indemnify and save harmless the CONTRACTOR, its officers, agents and employees, from and against any and all suits, claims, actions, losses, costs, penalties, and damages of whatsoever kind or nature, including attorney fees, arising out of, in connection with, or incident to, the work of this SUBCONTRACT, except that caused by the sole negligence of the CONTRACTOR. In the event of litigation between the parties to enforce the rights under this paragraph, reasonable attorney fees shall be allowed to the prevailing party.

In addition, the subcontract provided that Ace assume "toward the CONTRACTOR [Prime] all obligations and responsibilities which the CONTRACTOR has assumed toward the OWNER under the MAIN CONTRACT . . . ".[1] The main contract between Prime and Owner included the following clauses:

24. INDEMNIFICATION

24.1 The CONTRACTOR will indemnify and hold harmless the owner and the ENGINEER and their agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the WORK, provided that any such claims, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom: and is caused in whole or in part by any negligent or willful act or omission of the CONTRACTOR, and SUBCONTRACTOR, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable.

24.2 In any and all claims against the OWNER or the ENGINEER, or any of their agents or employees, by any employee of the CONTRACTOR, any SUBCONTRACTOR, anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the CONTRACTOR or any SUBCONTRACTOR under workmen's compensation acts, disability benefit acts or other employee benefits acts.

Ace and Prime brought cross motions for summary judgment. Ace, relying principally upon *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 613 P.2d 143 (1980), argued that the indemnity provision of the subcontract did

---

[1]Clause A of the subcontract reads in pertinent part:

"It is agreed that the SUBCONTRACTOR will assume toward the CONTRACTOR all obligations and responsibilities which the CONTRACTOR has assumed toward the OWNER under the MAIN CONTRACT, and shall be entitled to all protection granted the CONTRACTOR by the OWNER, under the MAIN CONTRACT. In case of conflict between the terms of the obligation and the responsibilities of the parties of this SUBCONTRACT and the MAIN CONTRACT, this SUBCONTRACT shall control."

not cover tort actions brought against Prime by Ace's employees because the clause did not specifically cover this contingency. Ace also argued that it was not required to indemnify Prime under the indemnity provision of the main contract between Owner and Prime. Conversely, Prime argued that it was entitled to indemnification under both indemnification clauses.

The trial court denied Prime's motion for summary judgment, granted Ace's motion for summary judgment, and dismissed Prime's third party complaint with prejudice. We affirm.

I

The essential issue is the validity and, therefore, the enforceability of the subcontract indemnification clause which purportedly provides for indemnification of Prime by Ace for damages arising from injuries to Ace's employees when this underlying claim, if brought directly against Ace by its employee, would be barred by RCW 51.04.010 and .060, the Industrial Insurance Act.

The Industrial Insurance Act, RCW Title 51, is a strong public policy statement toward limiting an employer's liability for its employees' job related injuries. In general, RCW 51.04.010 grants tort immunity to employers and, in exchange, gives employees sure and certain relief for any job related injury. Indemnity provisions operate to circumvent the provisions of the act by allowing employers to be ultimately liable for tort damages resulting from an employee's job related injury. Thus, indemnity provisions in effect waive the immunity of the Industrial Insurance Act. RCW 51.04.060, however, voids pro tanto any attempt by an employee or employer to exempt themselves from the benefits or burdens of the act.

While RCW 51.04.060 appears absolute, we have allowed enforcement of a properly worded indemnity agreement. See *Redford v. Seattle*, 94 Wn.2d 198, 615 P.2d 1285 (1980); *see also Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 588 P.2d 1308 (1978); *Tucci &*

*Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970). However, we have stated that (1) such agreements are disfavored and (2) any intent to provide indemnification must be clearly expressed in the agreement. *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 886, 652 P.2d 948 (1982). While this statement in *Glass* might be characterized as dicta because there was in fact no contractual indemnity agreement, it is a correct statement of our policy. *See Calkins v. Lorain Div. of Koehring Co.*, 26 Wn. App. 206, 209, 613 P.2d 143 (1980).

Important policy reasons support this insistence upon stringent requirements for a valid waiver of worker's compensation immunity by indemnification agreements. The assumption of a contractual liability to an employer's own employee runs contrary to the foundation of the industrial insurance scheme. We early recognized the compromise inherent in the resolution of adverse interests between employers and employees. It is certainty of compensation, without regard to employer fault, traded for the employer's immunity from employee suits. *Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 158 P. 256 (1916); *see also* RCW 51.04.010. "[T]hese clauses . . . create an additional loss allocation problem, as they result in an employer being responsible for the full tort recovery of its employee: a result in direct conflict with the workers' compensation scheme." Comment, *Indemnity Clauses and Workers' Compensation: A Proposal for Preserving the Employer's Limited Liability,* 70 Calif. L. Rev. 1421 (1982).

The language in *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 613 P.2d 143 (1980) is a proper statement of the law.

> Where employers agree to contract away their immunity under the act and to indemnify third parties for employee injuries, such an intent should be clearly expressed in the agreement.

*Calkins,* at 209. We hold that an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensa-

tion act, either by so stating or by specifically stating that the indemnitor assumes potential liability for actions brought by its own employees. The subcontract's clause does not meet this test.[2]

Prime argues that decisions by this court and the Court of Appeals support its position that the indemnification clause in the subcontract clearly expresses an intent to indemnify for employees' tort suits. Contrary to Prime's argument, *Brame v. St. Regis Paper Co.*, 97 Wn.2d 748, 649 P.2d 836 (1982) is not on point. The language in *Brame* that "[t]he indemnity clause in this case is enforceable", *Brame*, at 751, is dicta. *Brame* did not decide whether the language of the indemnification clause at issue effectively waived the employer's industrial immunity. To the extent this dicta conflicts with our holding in this case it is modified.

Similarly, *Redford v. Seattle, supra,* and *Tri–M Erectors, Inc. v. Donald M. Drake Co.*, 27 Wn. App. 529, 618 P.2d 1341 (1980) do not support Prime's position. Unlike the provisions of the subcontract in this case, the indemnity provisions in both of those cases specifically provided for actions involving employees.[3] *See Redford,* at 200; *Tri–M Erectors,* at 532.

---

[2]To the extent *Jones v. Robert E. Bayley Constr. Co.*, 36 Wn. App. 357, 674 P.2d 679 (1984) and *Noia v. Ferrell–Penning, Inc.*, 36 Wn. App. 13, 671 P.2d 790 (1983) are inconsistent with this opinion, they are disapproved.

[3]*Redford v. Seattle, supra,* relied extensively upon *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970) in deciding that indemnity provisions, as separate contractual undertakings, are enforceable. We reaffirm our approval of the language and rationale of the *Tucci* decision. In *Tucci*, however, the indemnification clause at issue was very similar to the indemnification clause in the Ace subcontract. The *Tucci* court did not address the sufficiency of the language of that clause to decide whether it effectively waived an employer's industrial immunity. Therefore, to the extent that *Tucci* may be inconsistent with our present holding it is so modified. Similarly, the court in *Northwest Airlines v. Hughes Air Corp.*, 37 Wn. App. 344, 679 P.2d 968 (1984) reached the correct result because the clause at issue therein also specifically included employees. However, the court reached its result through analysis which conflicts with our holding and, therefore, is also modified.

## II

Prime argues that even if the indemnity clause of the subcontract is not enforceable, the indemnity provision of the main contract would require indemnification by Ace under these circumstances. Prime argues that the indemnification clause of the main contract does specifically cover suits by injured employees. Prime continues that in clause A of the subcontract, see footnote 1, the subcontractor (Ace) assumed toward the contractor (Prime) all the obligations and responsibilities which the contractor (Prime) had assumed toward the Owner. Prime concludes from the foregoing that, therefore, Ace assumed toward Prime the same obligation as Prime assumed toward the Owner, *i.e.*, to indemnify for suits by its injured employees.

Incorporation by reference allows the provisions of a contract to be included within the terms of a second contract by referring to the first contract. *Kenworthy v. Bolin*, 17 Wn. App. 650, 654 n.3, 564 P.2d 835 (1977). However, we cannot adopt Prime's construction of the effect of the incorporation clause. First, it would create a conflict between the subcontract and main contract because Ace would have to indemnify under one provision and not the other. By the terms of the subcontract, see footnote 1, in cases of conflict the subcontract controls and, therefore, Ace would not be bound to indemnify Prime. Second, the indemnification and incorporation provisions of the subcontract create a manifest ambiguity and such confusion must be construed against the drafter, Prime. *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974); *accord, Dirk v. Amerco Mktg. Co.*, 88 Wn.2d 607, 565 P.2d 90 (1977). Finally, even if not manifestly ambiguous, both subcontract provisions, read together, fail to clearly express an intent on the part of Ace to waive its immunity under the workers' compensation provisions of RCW Title 51.

We believe the better interpretation of the effect of the incorporation provision and the main contract indemnification clause is that advanced by the respondent. When

clause A of the subcontract is read in conjunction with the main contract indemnification provisions the proper construction is that Ace must indemnify Prime under the main contract provisions if Prime had to indemnify the Owner for loss caused by reason of Ace's negligence or willful act. Plaintiff Brown never sued the Owner. Therefore, the main contract provision was never triggered and Prime is not entitled to indemnification under it.

We affirm.

WILLIAMS, C.J., and ROSELLINI, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.