[No. 58669-6-I.   Division One.   July 9, 2007.]

JORDA L. HATCH, *Plaintiff*, v. THE CITY OF ALGONA, *Appellant*, THE BOEING COMPANY, *Respondent*.

*John T. Kugler* (of *Burgess Fitzer, PS*), for appellant.

*Grant J. Silvernale III* and *Kelly F. Moser* (of *Perkins Coie, LLP*), for respondent.

¶1 DWYER, J. — An employer participating in Washington's industrial insurance system[1] may voluntarily undertake a contractual obligation to reimburse a third party for

---

[1] The Industrial Insurance Act is set forth in Title 51 RCW.

sums of money that the third party paid to the employer's employee, arising from a tort claim by the employee against the third party. However, for such a contractual obligation to be enforceable, the employer must have explicitly waived its Industrial Insurance Act (IIA) immunity in writing in the contract at issue. Because the document claimed to be such a contract herein does not contain such an explicit waiver of IIA immunity, the trial court correctly granted summary judgment, dismissing the city of Algona's claim against the Boeing Company. Accordingly, we affirm.

## FACTS

¶2 In the early 1990s, in order to obtain a building permit for construction of a welded-duct facility, Boeing submitted detailed building plans to Algona. Algona's contract professionals raised concerns about Boeing's plan to plant trees in Algona's right of way adjacent to a city sidewalk. Algona eventually agreed to allow Boeing to plant the trees outside of Algona's right of way, farther away from the sidewalk. Algona also required Boeing to install a root-barrier system to protect the sidewalk from damage from the trees' roots.

¶3 Boeing, however, planted the trees in Algona's right of way and near the sidewalk. After Algona expressed its displeasure at this development, Boeing agreed to repair, at its own expense, any future damage to "the adjacent sidewalk, curb, gutter, water main and street" caused by growth of the trees. Algona thereafter did not require Boeing to remove the trees. The evidence in the record of the terms of the Algona-Boeing agreement is a copy of a letter from Boeing's facilities operations manager to Algona's public works director, dated March 6, 1992, which states:

> The purpose of this letter is to confirm that The Boeing Company, acting by and through its division the Boeing Commercial Airplane Group, agrees to perform certain work resulting from the trees that were recently planted along 1st Ave. N. Specifically, Boeing agrees to repair at its expense any damage

to the adjacent sidewalk, curb, gutter, water main and street that is caused by growth of the trees.

If you have any questions concerning this matter please contact [the operations manager].

¶4 The roots of the trees eventually caused a portion of the sidewalk to slightly rise. Apparently, neither Boeing nor Algona inspected the sidewalk after the 1992 agreement, and no repairs were made or requested.

¶5 On March 29, 2004, while walking to work, Boeing employee Jorda Hatch tripped on the raised portion of the sidewalk, fell, and sustained injuries. Workers' compensation benefits were provided to Hatch. Hatch later initiated a civil lawsuit against the city of Algona, seeking to recover damages to compensate her for the injuries she sustained in the fall.

¶6 Algona impleaded Boeing, alleging that an "implied in fact contractual indemnity obligation" required Boeing to reimburse Algona for any money it paid to Hatch to satisfy her tort claim. Algona asserted that Boeing's obligation to it arose from Boeing's promise to repair damage to the sidewalk caused by growth of the trees, and from building permits requiring Boeing to plant the trees away from the city sidewalk and to install a root barrier.[2] In its third-party complaint, Algona alleged that Hatch's fall and injuries were consequences of Boeing's breach of its promise to maintain and repair the sidewalk and Boeing's violations of the building permit conditions. Algona sought to recover from Boeing, as consequential damages stemming from the alleged breaches, the money that Algona paid to settle Hatch's lawsuit and the attorney fees and costs Algona incurred in defending against Hatch's claims.

¶7 On Boeing's motion for summary judgment, the trial court dismissed Algona's claim against Boeing. Algona now appeals.

---

[2] Algona did not make the building permits part of the record in this case. Algona does not allege that the plans contained an express waiver of Boeing's IIA immunity. Accordingly, our analysis of the 1992 Boeing-Algona agreement applies equally to the building permits.

## DISCUSSION

¶8 Algona asserts that (1) the agreement between Boeing and Algona is a written contract; (2) the contract includes an implied agreement by Boeing to indemnify Algona for sums of money it paid to Hatch to satisfy her tort claim; and (3) IIA immunity does not apply to Algona's claim against Boeing and, thus, no waiver of such immunity by Boeing is necessary for Algona to prevail. However, even if we were to conclude that the agreement is a written contract and that the contract includes an implied agreement by Boeing to indemnify Algona, the absence of any evidence of an express written waiver by Boeing of its IIA immunity in the contract at issue vitiates Algona's claim and compels judgment in favor of Boeing.

¶9 We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hicks*, 134 Wn.2d at 495. We draw all reasonable inferences from the facts in the light most favorable to the nonmoving party. *McConiga v. Riches*, 40 Wn. App. 532, 536, 700 P.2d 331 (1985). In construing a statute, a question of law, we engage in de novo review. We construe a statute according to its plain language to effectuate the intent of the legislature. *Christenson v. McDuffy*, 93 Wn. App. 177, 179-80, 968 P.2d 18 (1998).

### IIA immunity

¶10 Initially, we must address Algona's assertion that the IIA is inapplicable to its claim against Boeing. Algona argues that Boeing's liability is based on a breach of its contractual obligation to Algona and asserts that Boeing's obligations to Algona are independent of whatever tort duties Boeing might have owed to its employee. Thus,

Algona asserts, no waiver of IIA immunity need be shown. We disagree.

¶11 The IIA " 'immunizes', from judicial jurisdiction, all tort actions which are premised upon the 'fault' of the employer vis-a-vis the employee." *Seattle First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 242, 588 P.2d 1308 (1978).[3] Because the immunity provided by the IIA extends to claims arising from this immunized area of tort law, "the impleading of [an employer] by third parties cannot be used as a device to permit the court to assume jurisdiction over such conduct." *Shoreline Concrete*, 91 Wn.2d at 242.

¶12 The IIA immunizes participating employers, such as Boeing, from third-party claims arising out of tortious injury to their workers. This is precisely the nature of Algona's claim. Thus, the immunity provisions of the IIA apply to Algona's claim against Boeing.

¶13 The fact that Algona's claim arises out of an alleged contract with Boeing does not remove the subject matter of the claim from the ambit of the IIA. Algona, in essence, argues that it ceded its own tort duty to maintain the city sidewalk at issue, by contract, to Boeing. Algona's breach of contract claim, therefore, is premised upon Boeing's alleged failure to discharge Algona's tort duty. That the tort duty was allegedly assigned by contract to Boeing does not change the nature of the duty—it is still a tort duty. The IIA shields Boeing from claims arising out of negligent injury to Boeing employees brought by a third party. *Shoreline Concrete*, 91 Wn.2d at 242-43 ("to be judicially cognizable, the third party's theory of *employer* liability cannot stem from conduct 'immunized' by the [IIA],

---

[3] The IIA specifically provides "that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided." RCW 51.04.010.

*e.g.*, that which necessarily involves the employer's conduct vis-a-vis the employee"). Algona's claim—that by virtue of its contract with Boeing, Boeing had a duty to act so as to prevent injury to Hatch, a Boeing employee—falls squarely within the ambit of the IIA.

### Waiver of IIA immunity

¶14  In *Brown v. Prime Construction Co.*, 102 Wn.2d 235, 684 P.2d 73 (1984), our Supreme Court recognized that employers participating in Washington's industrial insurance system may voluntarily undertake a contractual obligation to reimburse a third party for sums of money that the third party paid to the employer's employee, arising from a tort claim against the third party by the employee. However, the court noted that "[i]mportant policy reasons support . . . insistence upon stringent requirements for a valid waiver of worker's compensation immunity by indemnification agreements." *Brown*, 102 Wn.2d at 239. This is because

> [t]he assumption of a contractual liability to an employer's own employee runs contrary to the foundation of the industrial insurance scheme. We early recognized the compromise inherent in the resolution of adverse interests between employers and employees. It is certainty of compensation, without regard to employer fault, traded for the employer's immunity from employee suits.

*Brown*, 102 Wn.2d at 239. Accordingly, " '[w]here employers agree to contract away their immunity under the act and to indemnify third parties for employee injuries, such an intent should be clearly expressed *in the agreement.*' " *Brown*, 102 Wn.2d at 239 (emphasis added) (quoting *Calkins v. Lorain Div. of Koehring Co.*, 26 Wn. App. 206, 209, 613 P.2d 143 (1980)). Thus, for such a contractual obligation to be enforceable, the employer must have, in writing, explicitly waived its IIA immunity in the contract at issue.[4]

---

[4] Algona's reliance on language from *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970), *overruled by Jones v. Strom Construction*

¶15 Algona's position in this litigation is comparable to that of the general contractor in *Brown*, who contractually ceded its tort duty to maintain a safe workplace to its subcontractor. 102 Wn.2d at 236. The general contractor in that case was required to pay money to the subcontractor's employee for a tort injury at a construction work site in circumstances in which the subcontractor asserted IIA immunity, and sought to enforce the subcontractor's agreement to indemnify the general contractor for the sums paid to the employee. *Brown*, 102 Wn.2d at 236.

¶16 The court's analysis in *Brown* applies with equal force in this case. Contractual obligations undertaken by an employer that purport to create additional liability on the part of the employer for injuries to its employee are enforceable only if the employer effectively waives its IIA immunity. *Brown*, 102 Wn.2d at 239-40.[5] The contract at issue must contain an express waiver of IIA immunity to be enforceable against the employer. *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 128 Wn.2d 745, 754-55, 912 P.2d

---

*Co.*, 84 Wn.2d 518, 522, 527 P.2d 1115 (1974), as countervailing authority is unavailing. *Brown*, 102 Wn.2d 235, and cases that follow its holding, e.g., *Stocker v. Shell Oil Co.*, 105 Wn.2d 546, 549, 716 P.2d 306 (1986); *McDowell v. Austin Co.*, 105 Wn.2d 48, 53-54, 710 P.2d 192 (1985); *Waters v. Puget Sound Power & Light Co.*, 83 Wn. App. 407, 408-09, 924 P.2d 925 (1996); *Riggins v. Bechtel Power Corp.*, 44 Wn. App. 244, 255, 722 P.2d 819 (1986), correctly state the applicable law. Algona's reliance on *Redford v. City of Seattle*, 94 Wn.2d 198, 615 P.2d 1285 (1980), is also misplaced, as that case concerned enforcement of a properly worded indemnity agreement and is consistent in that regard with *Brown*, 102 Wn.2d 235.

[5] Despite Algona's argument to the contrary, this proposition is consistent with this court's opinion in *U.S. Oil & Refining Co. v. Lee & Eastes Tank Lines, Inc.*, 104 Wn. App. 823, 16 P.3d 1278 (2001), in which we held that where an employer breached a contract by failing to procure insurance, the IIA did not preclude a third-party lawsuit against the employer to recover monies the third party paid to the employer's employee arising from an uninsured tort claim against the third party by the employee.

Unlike the breach of contract in *U.S. Oil*, Boeing's alleged breach, which led to Algona's payment to Boeing's employee, is precisely that conduct which is alleged to have proximately caused Boeing's employee's injury. An employer's failure to procure insurance, by contrast, does not relate in any way to the events proximately causing its employee's injury and is, thus, distinct from the conduct of the employer vis-à-vis its employee. *See Shoreline Concrete*, 91 Wn.2d at 242-43.

472 (1996); *Brown*, 102 Wn.2d at 239-40.[6] Therefore, we must next examine the contract at issue to ascertain if it contains the requisite explicit, written waiver of IIA immunity.

### Boeing did not waive its IIA immunity

¶17 Assuming, without deciding, that the 1992 letter sent from Boeing to Algona is a written contract and that the contract included an implied agreement by Boeing to indemnify Algona for sums that Algona paid to Hatch arising from Hatch's tort claim against Algona, our inquiry becomes whether the letter contains an effective waiver of Boeing's IIA immunity. It does not.

¶18 An employer's waiver of its IIA immunity is enforceable only if it appears in writing in the contract at issue and is explicit. In other words, the contract must specifically waive the IIA immunity, in writing, "either by so stating or by specifically stating that the indemnitor assumes potential liability for actions brought by its own employees." *Brown*, 102 Wn.2d at 240. While courts may infer the existence of an indemnity agreement, *Brown* requires that a waiver of IIA immunity be expressly written into the contract at issue for it to be enforceable. *Brown*, 102 Wn.2d at 240.

¶19 In its 1992 letter to Algona, Boeing did not expressly waive its IIA immunity—Boeing merely agreed "to repair at its expense any damage to the adjacent sidewalk, curb, gutter, water main and street that is caused by growth of the trees." There is no language in the letter that raises a genuine issue of material fact on the question of whether Boeing explicitly waived its IIA immunity in the contract at issue. Such a waiver is a necessary condition precedent for Algona's claim to be cognizable.

---

[6] An "indemnification agreement" is not, in fact, anything other than a contractual promise. Algona's alleged agreement with Boeing, with its asserted implied provision for indemnity is, likewise, a contractual promise. The requirements that a contractual waiver of IIA immunity be explicit, in writing, and part of the contract at issue, apply equally to any such agreement. Whether such a contractual promise is termed an "indemnity agreement" or not is immaterial.

¶20 Boeing correctly asserts that it did not expressly waive its immunity under the IIA. Thus, Boeing is entitled to rely on the statutory immunity granted it by the IIA. The trial court properly dismissed Algona's claim against Boeing for want of subject matter jurisdiction.

¶21 Affirmed.

COLEMAN and ELLINGTON, JJ., concur.

Review denied at 163 Wn.2d 1040 (2008).