[No. 55935-4-I.   Division One.   July 3, 2006.]

MacLean Townhomes, L.L.C., *Appellant*, v. America 1st
Roofing & Builders, Inc., et al., *Defendants*, P.J.
Interprize, Inc., *Respondent*.

*Mark. F. O'Donnell* and *Lori K. McKown* (of *Preg, O'Donnell & Gillett, P.L.L.C.*), for appellant.

*Eileen I. McKillop* (of *Oles, Morrison, Rinker & Baker, L.L.P.*), for respondent.

¶1 DWYER, J. — General contractor MacLean Town-homes, L.L.C., seeks indemnity from its subcontractor, P.J. Interprize, Inc., to recover damages it incurred defending against, and settling, a condominium homeowners association's claim alleging construction defects. The trial court dismissed MacLean's claims, holding that the subcontractor's indemnification agreement only applied to third-party tort claims and that all of MacLean's claims were contract-based. Although the indemnity provision at issue does specifically limit P.J. Interprize's liability with respect to tort claims, it does not restrict those liabilities to only tort claims. The indemnity clause at issue clearly allows MacLean to seek defense and indemnification from the respondent against the homeowners' claim. Accordingly, we reverse.[1]

## FACTS

¶2 MacLean was the developer and general contractor of Summerhill Village, a condominium project in Issaquah, Washington. MacLean entered into a subcontract with P.J. Interprize to perform specific aspects of the Summerhill Village construction.

¶3 In 2003, the Summerhill Village Home Owners' Association (HOA) claimed that MacLean breached express and implied warranties of quality under the Washington Condominium Act, chapter 64.34 RCW, and the parties entered

---

[1] MacLean's similar claims against subcontractor Janes Bros. Waterproofing, Inc., were settled while this appeal was pending.

into a cooperative investigation and repair resolution agreement.

¶4 On March 23, 2004, MacLean filed a complaint against several of the Summerhill Village subcontractors, including P.J. Interprize. MacLean alleged that the subcontractors were liable for breach of contract for defective performance, defense, and indemnity. In its answer, P.J. Interprize denied that it had a duty to accept MacLean's tender of defense or to indemnify MacLean pursuant to the subcontract. MacLean's subsequent motion for partial summary judgment on its breach of contract and duty to defend claims was denied.

¶5 On December 1, 2004, MacLean and the HOA reached a settlement under which MacLean paid the costs of repair of the construction defects.

¶6 P.J. Interprize then moved for summary judgment dismissal of MacLean's claim for contractual indemnity, arguing that the indemnification provision of its subcontract only applied to third-party tort claims. The trial court agreed and, finding MacLean's claims sounded in contract, granted the motion.[2]

¶7 MacLean subsequently pursued breach of contract claims based on P.J. Interprize's alleged defective performance of work. The trial court found that there were "no damages separate and apart from the indemnity claims" and granted P.J. Interprize's motion for summary judgment dismissal of MacLean's remaining breach of contract claims.[3]

¶8 MacLean appeals.

## DISCUSSION

¶9 MacLean argues that the trial court erred in dismissing its claims because its contract with P.J.

---

[2] The trial court also granted P.J. Interprize's motion to strike portions of a MacLean representative's declaration.

[3] Clerk's Papers at 2107.

Interprize obligated P.J. Interprize to defend and indemnify MacLean against the HOA's construction defect claims. Conversely, P.J. Interprize argues that its contract contains references to negligence claims that operate to restrict its duties of defense and indemnification to only tort-based actions. We review the trial court's summary judgment orders de novo. *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998); CR 56(c).

¶10 "Indemnity agreements are essentially agreements for contractual contribution, whereby one tortfeasor, against whom damages in favor of an injured party have been assessed, may look to another for reimbursement." *Stocker v. Shell Oil Co.*, 105 Wn.2d 546, 549, 716 P.2d 306 (1986). When interpreting an indemnity provision, we apply fundamental rules of contract construction. *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974). The words used in a contract should be given their ordinary meaning. *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 637, 745 P.2d 53 (1987). Courts may not adopt a contract interpretation that renders a term absurd or meaningless. *Seattle-First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 274, 711 P.2d 361 (1985).

¶11 The indemnity provision of the master agreement between P.J. Interprize and MacLean states:

SUBCONTRACTOR shall defend, indemnify, and hold CONTRACTOR harmless from *any and all claims, demands, losses and liabilities to or by third parties arising from, resulting from, or connected with, services performed or to be performed under this Subcontract* by SUBCONTRACTOR or SUBCONTRACTOR'S agents, employees, subtier Subcontractors, and suppliers *to the fullest extent permitted by law and subject to the limitations provided below*:

SUBCONTRACTOR'S duty to indemnify CONTRACTOR shall not apply to liability from damages arising out of bodily injury to persons or damages to the property caused by, or resulting from, the sole negligence of CONTRACTOR, or CONTRACTOR'S agent or employees.

SUBCONTRACTOR'S duty to indemnify CONTRACTOR for liability for damages arising out of bodily injury to persons or

damages to property caused by or resulting from the concurrent negligence of CONTRACTOR or CONTRACTOR'S agents or employees shall apply only to the extent of negligence of SUBCONTRACTOR or SUBCONTRACTOR'S agents, employees, and subtier Subcontractors and suppliers.

SUBCONTRACTOR specifically and expressly waives any immunity that may be granted under the Washington State Industrial [Insurance] Act, Title 51, RCW. Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation, benefits payable to or by any third party under Worker's Compensation Acts, Disability Benefit Acts, or other employee benefits acts.

SUBCONTRACTOR'S duty to defend, indemnify, and hold CONTRACTOR harmless as to all claims, demands, losses, and liabilities shall include CONTRACTOR'S personnel related costs, reasonable attorney fees, court costs, and all related expenses.

CONTRACTOR and SUBCONTRACTOR hereby certify that these indemnification provisions were mutually negotiated and agreed to by the parties.

Clerk's Papers (CP) at 344-45 (emphasis added).[4]

¶12 P.J. Interprize contends that the inclusion of specific references to tort-based claims in its indemnification provision obviates the references to covered claims that precede it. It would have us read the contract as though, in the first sentence above-quoted, the word "tort" was placed between the word "all" and the word "claims." However, this would dramatically alter the meaning of the phrase "any and all claims." Although the parties could have drafted the provision in the manner urged by P.J. Interprize, they did not.

¶13 The indemnity provision clearly states that P.J. Interprize's duty to defend and indemnify applies to "any

---

[4] P.J. Interprize suggests that there is an issue of fact related to which of its agreements with MacLean governs this dispute. But the master agreements signed by the parties on August 21, 1998, and January 14, 1999, contain identical language to that contained in the June 23, 1997 master agreement cited both above and in P.J. Interprize's appellate briefing.

and all claims ... arising from ... services performed ... under [the] Subcontract ... to the fullest extent permitted by law and subject to the limitations provided below." The five paragraphs that follow contain various specifications regarding the subcontractor's duties, none of which say that the initial characterization "any and all" is, in fact, restricted to only tort-based claims.[5] We find that the only reasonable construction of the phrase "subject to the limitations provided below" is that the parties merely included specific limitations *on* tort actions, not that they limited the subcontractor's duty *to* tort actions.

¶14 We are similarly unpersuaded by P.J. Interprize's efforts to convince us that broad indemnity provisions such as this are not permitted by law. Its arguments to that effect confuse issues involving the economic loss rule, privity of contract, and negligent construction[6] with the real issue,

---

[5] It is clear to us that the parties included negligence language in order to comply with RCW 4.24.115, which states, in pertinent part:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract ... relative to the construction ... of ... any building ... purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property:

(1) Caused by or resulting from the sole negligence of the indemnitee, his agents or employees is against public policy and is void and unenforceable;

(2) Caused by or resulting from the concurrent negligence of (a) the indemnitee or the indemnitee's agents or employees, and (b) the indemnitor or the indemnitor's agents or employees, is valid and enforceable only to the extent of the indemnitor's negligence and only if the agreement specifically and expressly provides therefor, and may waive the indemnitor's immunity under industrial insurance, Title 51 RCW, only if the agreement specifically and expressly provides therefor and the waiver was mutually negotiated by the parties. This subsection applies to agreements entered into after June 11, 1986.

[6] Respondent cites *Berschauer/Phillips Construction Co. v. Seattle School District No. 1*, 124 Wn.2d 816, 881 P.2d 986 (1994), as supporting a bright line between tort and contract in construction claims and as supporting the trial court's interpretation of the indemnity agreements.

However, *Berschauer* only resolved the issue of "whether the economic loss rule prevents a general contractor from recovering purely economic damages in tort from an architect, an engineer and an inspector, none of whom were in privity of contract with the general contractor." 124 Wn.2d at 821. That case is inapposite, as MacLean is in privity with its subcontractors, from whom it seeks reimbursement on breach of their indemnity agreements, issues not raised at all in *Berschauer*. Likewise, *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 831 P.2d 724 (1992), does not apply here. The issues in *Touchet Valley* were limited to whether a subrogation waiver in the contract between the building owner and the contractor insulated the

which is whether MacLean can and did secure rights of indemnification for third-party construction defect claims from its subcontractor. P.J. Interprize does not cite, and we did not find, a single case holding that a general contractor's right of indemnification from its subcontractors may only be triggered by a third-party tort claim against the general contractor.[7]

¶15 Finally, we note that there are two matters raised in this appeal that we do not decide. First, the trial court did not decide whether the economic loss rule has any effect on MacLean's claims; accordingly, we do not do so. If appropriate, the issue may be addressed on remand. Second, it is unclear on the record before us whether MacLean may pursue damages related to contract claims that are separate from the respondent's duties to defend and indemnify. This, too, may be addressed by the trial court on remand.

¶16 In sum, because the indemnity provision at issue herein clearly and unambiguously is so broad as to provide that the types of claims for which the subcontractor must defend and indemnify include contract claims, the trial court erred in ordering summary judgment dismissal of MacLean's claims. The order dismissing MacLean's indemnification claims and the order dismissing all of MacLean's remaining claims are both reversed and the cause is re-

contractor from liability to the extent of the owner's insurance coverage, whether a subrogation waiver protected the contractor's surety but did not protect the subcontractor and manufacturer, and whether the owner raised valid warranty claims against a product manufacturer. *Touchet Valley*, 119 Wn.2d at 337. The court did not discuss the issue of an indemnity agreement, let alone whether the economic loss rule would apply to one. The subcontractors also misapply *Atherton Condominium Apartment-Owners Ass'n v. Blume Development Co.*, 115 Wn.2d 506, 799 P.2d 250 (1990), and *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 745 P.2d 1284 (1987), neither of which had anything to do with contractual indemnity agreements.

[7] To the contrary, in *Karnatz v. Murphy Pacific Corp.*, 8 Wn. App. 76, 503 P.2d 1145 (1972), this court examined the effect of an indemnification agreement with language that is functionally equivalent to the language in the agreement in this case and stated that " 'it would be most difficult to assemble words which describe a more comprehensive and all-inclusive intent by the indemnitor to indemnify the indemnitee for all losses suffered by the indemnitee.' " *Karnatz*, 8 Wn. App. at 81 (quoting *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 1038, 467 P.2d 386 (1970)).

manded to the trial court for proceedings consistent with this opinion.[8]

¶17 Reversed and remanded.

SCHINDLER, A.C.J., and COLEMAN, J., concur.

_____

[8] In light of the court's disposition of the issues in this case, we need not decide whether the trial court properly granted the motion to strike a declaration submitted by MacLean.