[No. 36764-5-II. Division Two. February 10, 2009.]

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *as Assignee, Appellant,* v. DEBORAH JO DALLY ET AL., *Respondents.*

*Alexander A. Friedrich* (of *Yusen & Friedrich*), for appellant.

*Alan B. Hughes* (of *Alan B. Hughes, PS*), for respondents.

¶1 PENOYAR, A.C.J. — Fidelity & Deposit Company of Maryland seeks reimbursement for its insurance payment to the city of Poulsbo (City) for a city employee's theft of AllianceOne Receivables Management, Inc., checks paid to the City. The City contracted with AllianceOne to collect outstanding traffic fines, penalties, and costs. Fidelity claims that the indemnification agreement makes AllianceOne liable as AllianceOne used improper payee designations and failed to check the endorsements after the checks were cashed. The trial court found no theory of liability applied under the agreement and granted summary judgment to AllianceOne. We affirm.

## FACTS

¶2 The City hired Deborah Jo Dally on June 10, 1996, as the Poulsbo Municipal Court administrator. That same month, she began depositing city checks in a personal account with the Naval Federal Credit Union (NFCU). She continued to do so for over six years until an investigation

revealed her ongoing thefts. Her last day with the City was December 27, 2002.

¶3 The checks that Dally stole came from a single source. Since April 11, 1994, the City had a professional services contract with AllianceOne for collecting unpaid fines, penalties, and costs. Under that contract, AllianceOne would keep one-third of the money it collected and remit the remainder to the City.[1] Twice a month AllianceOne would issue two checks to the City, one for fines collected and one for penalties and costs collected. Typically, it sent these checks on the first and fifteenth day of each month. Over a six-year period, Dally stole 252 of these checks with a total value of $285,100.45. Dally also falsified cash receipts over a four-year period, stealing $5,127.00 between March 1998 and December 2002.

¶4 AllianceOne used four different payees on these checks: "Poulsbo Municipal Court," "Poulsbo Municipal Infractions," "Poulsbo Municipal," and "Poulsbo Municipal Criminal." Clerk's Papers (CP) at 23. Using city letterhead, Dally presented a letter to the NFCU explaining that the checks were for past due child support that the City had collected on Dally's behalf. Dally endorsed the checks as "Poulsbo Municipal Court" followed by the name of the former court administrator "Sue O'Brien" and followed by "ddally" and her account number. CP at 587-1007.

¶5 The City fired Dally in December 2002 after discovering the thefts. Dally pleaded guilty to 10 counts of

---

[1] The contract provided:

VII. REMITTANCES: Funds collected by the Agency shall be paid to the Client on or before the fifteenth (15) day of each month for collections made the preceding month. Payments to the Client shall be for the total amount collected, less the appropriate fees. The Agency shall supply sufficient documentation with monthly payment to allow independent verification of total amounts collected and calculations of appropriate fees withheld. In the event additional reports are deemed necessary by the Client for further breakdown purposes, the Agency will cooperate with the Client in providing necessary reports. The Client may audit the Agency's records pertaining to accounts assigned for collection upon reasonable advance notice.

Clerk's Papers at 26.

first degree theft, and the trial court imposed 57 months' incarceration and $307,261.16 in restitution.

¶6 The City made a claim under its public employee dishonesty policy with Fidelity, which Fidelity paid, and Fidelity then began this lawsuit against AllianceOne, Dally, and the NFCU. The trial court granted AllianceOne's motion for summary judgment, dismissing it from the case. The trial court then certified its decision under CR 54(b).

¶7 The trial court's order focused on the indemnification agreement in the professional services contract between the City and AllianceOne. The contract defines the "Client" as "City of Poulsbo Municipal Court" and defines the "Agency" as "Allied Credit Companies." CP at 26. The indemnification provision provides:

> VIII. INDEMNIFICATION: The Agency agrees and covenants to indemnify, defend and save harmless the client and its officers, agents and employees against and from *any loss, damage, costs, charges, expense, liability, claims, demands or judgments, of whatsoever kind of nature*, whether to persons or property *arising wholly or partially out of an act or omission on the part of the Agency*, its subcontractors and/or employees, *except only such injury or damage as shall have been caused by or resulted from the negligence of the Client.*

CP at 26-27 (emphasis added).

¶8 Fidelity raises three issues on appeal: (1) Does the indemnification clause in the professional services contract require proximate causation between AllianceOne's acts or omissions and the losses incurred? (2) Did AllianceOne breach its contract with the City when it made out its checks to entities other than the *City of Poulsbo* or the *City of Poulsbo Municipal Court*? and (3) Did AllianceOne breach its duty to perform its duties under the contract with reasonable care when it failed to (a) use proper payee designations and (b) verify the endorsements on the checks?

## ANALYSIS

### I. STANDARD OF REVIEW

██ ██ ¶9  We review a summary judgment order de novo, making the same inquiry as the trial court; summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue about any material fact and, assuming facts most favorable to the nonmoving party, establish that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### II. SCOPE OF INDEMNIFICATION AGREEMENT

¶10  Fidelity argues that the indemnity agreement, which AllianceOne drafted, makes AllianceOne liable for any loss the City might incur, including theft, except for damages caused by the City's own negligence. It argues that the plain reading of the indemnification clause makes AllianceOne liable for "any loss" the City might incur "arising wholly or partially out of" AllianceOne's acts under the contract. CP at 26-27. It argues that AllianceOne took responsibility for any risk of loss from its collection activities, ensuring that the City would receive two-thirds of the money collected.

¶11  Fidelity relies on *MacLean Townhomes, LLC v. America 1st Roofing & Builders, Inc.*, 133 Wn. App. 828, 138 P.3d 155 (2006). There, a subcontractor agreed to indemnify the general contractor for "any and all claims." The subcontractor, P.J. Interprize, argued that it was liable for only tort claims, not contract claims. Employing a plain reading of the provision, Division One of this court held that the indemnification clause applied to any and all claims in both tort and contract. The court noted:

> It would have us read the contract as though . . . the word "tort" was placed between the word "all" and the word "claims." However, this would dramatically alter the meaning of the

phrase "any and all claims." Although the parties could have drafted the provision in the manner urged by P.J. Interprize, they did not.

133 Wn. App. at 832. Fidelity argues that AllianceOne could have drafted the indemnity clause to limit its liability to negligent acts but that it did not; rather, it indemnified "any loss" arising from its collection activities under the contract. It argues that the words "arising . . . out of" as used in the clause do not require proximate cause but, rather, only that the loss flows out of or from AllianceOne's actions. Report of Proceedings at 26-27.

¶12 Fidelity also relies on *Toll Bridge Authority v. Aetna Insurance Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989), where the court ascribed different meanings to these concepts:

> The phrase "arising out of" is unambiguous and has a broader meaning than "caused by" or "resulted from." *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976). It is ordinarily understood to mean "originating from", "having its origin in", "growing out of", or "flowing from". *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986).

¶13 Continuing, Fidelity argues that AllianceOne chose to make its payments to the City using corporate checks and the City suffered a loss because some of those checks were stolen. To read the contract otherwise, Fidelity argues, renders much of the indemnification clause meaningless; i.e., if AllianceOne is liable for only its own negligent acts, there is no reason to include the sole exclusion for the City's negligent acts.

¶14 The indemnification clause here covers "any loss" arising "wholly or partially" out of an "act or omission" by AllianceOne. While Fidelity arguably does not have the burden of showing a breach of contract or negligence and proximate cause, it must at least demonstrate some factual connection, some nexus, between the acts of AllianceOne and the loss. Taken in the light most favorable to Fidelity,

the evidence submitted simply does not support a finding that Dally's theft of city checks "arose" out of any act by AllianceOne. There is no evidence of any nexus between AllianceOne's payee designations and Dally's thefts. There is also no evidence that AllianceOne's use of corporate checks played any part in the losses. Use of corporate checks is certainly a reasonable method of payment and no evidence shows that AllianceOne remitted funds this way over the City's objection or that doing so increased the risk of theft. Once the funds were remitted to the City, AllianceOne's involvement with them ceased and nothing that happened to the funds thereafter "arose" from AllianceOne's activities. Summary judgment on the indemnity issue was proper.[2]

III. BREACH OF CONTRACT

¶15 Fidelity argues further that the losses the City suffered resulted directly from AllianceOne's breach of contract in that AllianceOne made out the checks to nonexistent payees whereas the contract required that it pay "the Client" the funds it collected. CP at 26-27. Fidelity also argues that the City did not waive this contractual provision by its course of dealing with AllianceOne by accepting checks made to these nonexistent payees. Fidelity also notes that there is no evidence of an oral or written agreement to change the terms of the contract and the City never endorsed the checks with an improper name. It consistently endorsed the checks as "City of Poulsbo."

■ ■ ¶16 To prevail on a contract claim, the plaintiff must show an agreement between the parties, a party's duty under the agreement, and a breach of that duty. *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516, 5 P.3d 722 (2000) (citing *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995)). Here, the contract did not impose a duty on AllianceOne to

---

[2] *See also Nunez v. Am. Bldg. Maint. Co. W.*, 144 Wn. App. 345, 190 P.3d 56 (2008) (indemnification clause did not apply in contract between landlord and janitorial service provider).

use a specific payee on its checks to the City. Nor did the contract impose a duty to verify the endorsements on those checks. As there was no duty, there can be no breach or resulting damages.[3] Summary judgment on the contract claim was proper.

IV. NEGLIGENCE

¶17 Fidelity next argues that the trial court erred in dismissing its negligence claim against AllianceOne. It argues that AllianceOne had a duty of reasonable care in making its payments to the City and, in using improper payee designations and in failing to verify the endorsements on the checks, it breached this duty and contributed to the City's losses.

¶18 Fidelity points out that (1) not one of the stolen checks had a proper payee; (2) only the mayor, deputy mayor, alternative deputy mayor, and finance director had authority to sign such checks;[4] and (3) AllianceOne presented no evidence that Dally would have stolen or NFCU would have cashed checks made out to a proper payee. It argues that a reasonable jury could draw this inference and, thus, summary judgment was improper.

¶19 Fidelity argues that the indemnity agreement placed a duty on AllianceOne to take reasonable measures to protect the City from loss and ensure that the City received the funds it collected. Fidelity reasons that a reasonable jury could infer that AllianceOne's choice to make its payments by corporate check made it reasonably foreseeable that someone would lose or steal those checks. If AllianceOne had simply verified the endorsements, Fidelity argues, it could have protected against that risk. It

---

[3] Moreover, even if a duty to use a specific payee designation existed when the parties contracted, the passage of time and the course of dealing between the parties likely demonstrate waiver as a matter of law.

[4] It cites Poulsbo Municipal Code section 3.04.030, but this section applies only to those authorized to write checks on the City's behalf. Chapter 3.04, entitled "Policy for the Payment of Claims," describes the City's policy for paying claims, payroll, and other obligations.

would have taken little effort, Fidelity explains, because all of the properly cashed checks were stamped for deposit only with the city of Poulsbo, whereas the stolen checks had handwritten endorsements, the purported signature of a former court administrator, and Dally's name and account number.

¶20 Fidelity argues that AllianceOne already had a duty of care to the bank to check its endorsements and, had it taken simple and reasonable steps, it could have prevented much of the City's losses. *See* RCW 62A.4-406(f) (one who does not discover and report unauthorized endorsements within one year is precluded from asserting such improper endorsements against the bank).

¶21 AllianceOne responds that no statute, common law, contractual provision, or authority imposes on it a duty to verify endorsements. It argues that Fidelity similarly fails to show any loss resulting from an alleged breach of this duty. It argues that Fidelity's reliance on RCW 62A.4-406(f) is wholly inapplicable as that defines the duty between a bank and an account holder, explaining that after one year, the account holder can no longer hold the bank liable for fraudulent endorsements. AllianceOne argues that RCW 62A.3-405(b) applies instead. It holds an employer responsible for an employee's fraud. Comment 1 to that provision explains:

> Section 3-405 is based on the belief that the employer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged indorsements on instruments payable to the employer . . . .

U.C.C. § 3-405 cmt. 1.

■■ ¶22 To prevail in a negligence claim, the plaintiff must show (1) duty, (2) breach, (3) injury, and (4) causation. *Hansen v. Wash. Natural Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981). As noted above, neither by contract nor by common law did AllianceOne have a duty to use a specific payee on its checks, nor did it have a duty to verify the

endorsements. Nor did AllianceOne have a duty to protect the City from employee theft. There are no material facts in dispute that would change this result. Summary judgment was appropriate.

¶23 Affirmed.

BRIDGEWATER and QUINN-BRINTNALL, JJ., concur.