# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KING COUNTY, a political subdivision of the State of Washington,

        Plaintiff,

        v.

CPM DEVELOPMENT CORP., dba ICON MATERIALS, a Washington corporation,

        Defendant.

CPM DEVELOPMENT CORP., dba ICON MATERIALS, a Washington corporation,

        Third-Party Respondent,

        v.

D & R EXCAVATING, INC., a Washington corporation; DOUGLAS D. HOFFMANN and SUSAN K. HOFFMANN, and the marital community composed thereof,

        Third Party Appellants.

D & R EXCAVATING, INC., a Washington corporation,

        Fourth Party Appellant,

        v.

DIVISION ONE

No. 83596-3-I

UNPUBLISHED OPINION

FIDELITY & DEPOSIT COMPANY OF
MARYLAND PAYMENT BOND NO.
9283912,

         Fourth Party Respondent.

DWYER, J. — This appeal arises from a dispute between King County, CPM Development Corp., d/b/a ICON Materials (ICON), and D & R Excavating concerning the unlawful disposal of recycled asphalt pavement millings on Vashon Island. D & R appeals from the judgment on a jury verdict awarding damages to ICON and King County. Finding no error, we affirm.

I

On May 15, 2018, King County executed a contract with ICON to act as the general contractor for its Vashon Island Highway Pavement Preservation project. This project entailed the removal, repair, and replacement of approximately 12 miles of roadway on Vashon Island.

Under the terms of the contract, ICON was required to grind or plane the top layer of the asphalt road on Vashon Highway SW, so that new pavement could be applied. The contract specified that ICON was to dispose of the asphalt millings in accordance with section 2-03.3(7)(C) of the 2018 WSDOT[1] Standard Specifications for Road, Bridge and Municipal Construction. This provision states:

> If the Contracting Agency provides no waste site, but requires disposal of excess excavation or other materials, the Contractor shall arrange for disposal at no expense to the Contracting Agency, except as provided in Section 2-03.3(7)(B), item 2.

_____

[1] Washington State Department of Transportation.

The Contractor shall acquire all permits and approvals required for the use of the disposal sites before any waste is hauled off the project.

The King County Code (KCC) specifies that asphalt millings may not be disposed of in any area classified as a critical aquifer recharge area. KCC 16.82.100(A)(4)(d). King County has classified all of Vashon Island as a critical aquifer recharge area.

In accordance with the contract, King County provided a temporary disposal site for asphalt millings at a location known as the Melita Pit on Maury Island. All millings needed to be removed from the Melita Pit within 30 days after substantial completion of the pavement project. If ICON wished to use any additional disposal sites, it was required to obtain any permits necessitated by law, as well as receive approval from the County.

ICON entered into a subcontract with D & R[2] to haul the asphalt millings away from the project site and properly dispose of them. The subcontract between ICON and D & R expressly incorporated all terms of ICON's contract with King County. Paragraph 1.6 of the subcontract also stated:

> Subcontractor has fully acquainted itself with and shall be solely responsible for all physical and nonphysical conditions affecting the Subcontractor's Work, the Project site, and surrounding conditions, as well as all laws, ordinances, regulations, and governmental requirements applicable to the Work, including the proper removal and disposal of waste and contaminants encountered on the Project.

Additionally, the scope of the work defined by the subcontract clarified that all "Milled Asphalt to be disposed of at approved site."

---

[2] D & R is a construction service company owned by Douglas and Susan Hoffmann.

3

Attached to the subcontract was an addendum which reads, in relevant part, as follows:

> Subcontractor shall defend, indemnify and hold harmless Contractor and its affiliates and corporate parents, officers, directors, sureties, agents and employees, and any entities to whom Contractor has Indemnification obligations under the Contract ("the Indemnities"), from and against any and all losses, costs, claims (even though such claims may prove to be false, groundless, or fraudulent), demands, penalties, damages, expenses or liabilities, arising from, resulting in any manner directly or indirectly from or connected with or in the course of the performance of the Subcontractor Work or the Subcontractor obligations.

ICON initially sought approval from King County to utilize a property known as the Williams Property as a temporary disposal site for the asphalt millings, in addition to the Melita Pit. King County rejected the request. ICON notified D & R of King County's rejection.

Despite knowing that the site was not approved, D & R nevertheless disposed of some of the asphalt millings at the Williams Property. After County staff observed asphalt millings stockpiled at the Williams Property, King County sent a notice to ICON to cease further disposal of asphalt millings at the property. King County subsequently issued a stop work order, directing ICON to immediately cease stockpiling asphalt millings at the Williams Property and directed it to relocate the millings to an approved location. ICON informed D & R of the notice and stop work order, advised D & R that it was in breach of its subcontract, and demanded that D & R remove the millings. D & R took no action.

King County subsequently received complaints from members of the

community about asphalt millings being disposed of at various private properties on Vashon Island, including the Misty Isle Farm and property belonging to the Hoffmanns. D & R had disposed of asphalt millings at these sites without obtaining either permits or approval from King County. On August 14, 2018, King County issued stop work notices for the Williams Property, the Misty Isle Farm, and the Hoffmanns' private property. Again, D & R took no action.

On October 10, 2018, King County declared the project substantially complete, triggering the 30-day window for removal of all millings from the Melita Pit. ICON sent two letters to D & R, requesting that it provide ICON with a mitigation plan for removal of millings from the Melita Pit and various private properties that D & R had used to dispose of asphalt millings. D & R responded that it would take no action until it "worked through these matters with King County."

In light of D & R's failure to remove any of the millings after multiple demands from ICON, ICON terminated the subcontract on November 19, 2018. ICON then removed the millings from the Williams Property, Melita Pit, Misty Isle Farm, and six other private properties, incurring substantial costs in doing so. ICON contacted D & R and the Hoffmanns on two separate occasions, requesting that they grant access to the Hoffmann property so that ICON could remove the asphalt millings located on that property. The Hoffmanns refused to grant ICON access to their property.

On May 3, 2019, King County issued a Notice of King County Code Violation to ICON and the Hoffmanns for improperly disposing of asphalt millings

5

in a critical aquifer recharge area. ICON appealed through administrative channels and tendered a defense to D & R's insurer.[3] D & R refused to provide ICON with conflict-free counsel.

King County filed suit against ICON on August 30, 2019, asserting a claim for breach of contract for ICON's failure to remove the asphalt millings from the Hoffmann property.[4] ICON answered, asserted counterclaims for breach of contract and unjust enrichment, and pleaded claims against third party defendants D & R and the Hoffmanns for breach of contract, express indemnity, equitable indemnity, and tortious interference. After being joined as a party, D & R filed a fourth party complaint against Fidelity, ICON's surety and bonding agent, for amounts it asserted were unpaid by ICON for work performed. D & R separately asserted claims for breach of contract, conversion, and tortious interference with a business expectancy against ICON and a tortious interference claim against King County. King County then filed a counterclaim against D & R for public nuisance.

On February 5, 2021, ICON filed a motion for partial summary judgment requesting a ruling that D & R breached its contractual requirement to defend, indemnify, and hold ICON harmless from all costs and damages incurred. The trial court granted the motion. The trial court accordingly ordered that:

> 3. D&R is in breach of the Subcontract for failing to defend, indemnify, and hold ICON harmless.
>
> 4. D&R is contractually required to indemnify, defend, and hold

---

[3] ICON later submitted a second tender of defense in connection with this litigation.

[4] King County later amended its complaint to include other private properties that ICON was unable to access for remediation.

harmless ICON against the King County claims and directives related to D&R's work, including but not limited to D&R's failure to remove the millings as directed by King County and ICON, King County's Code Enforcement Actions related to D&R's work and the above-captioned litigation against ICON commenced by King County.

On July 9, 2021, ICON filed a motion for partial summary judgment seeking dismissal of D & R's tort claims against it and the claim against its bond and surety. The trial court ruled that D & R's tort claims were barred by the independent duty doctrine and that D & R had no valid claim against the bond or the surety because ICON had not failed to pay D & R under the terms of the subcontract. Accordingly, the trial court granted ICON's motion.

A jury trial was conducted via Zoom from September 27, 2021 to October 14, 2021. While trial was ongoing, King County and ICON settled all claims between each other. The jury was so instructed.

At the close of the evidence, the trial court provided the jury with the following pertinent instructions:

> Any civil violation of King County code is detrimental to the public health, safety and environment and is declared public nuisances.
>
> King County Code Title 16.82.100 A.4.d states that recycled asphalt shall not be used as fill in areas subject to exposure to seasonal or continual perched ground water, in a critical aquifer recharge area or over a sole-source aquifer.
>
> If you find that Third-Party Defendants violated King County Code 16.82.100A.4.d, then you must find that the Third-Party Defendants committed a public nuisance, and that King County has satisfied its burden of proving the first and second propositions found in Instruction No. 10.

Jury Instruction 9.

7

King County has the burden of proving each of the following propositions with respect to the claim of nuisance:

(1) That D&R Excavating Inc., Douglas and Susan Hoffmann acted unlawfully; and

(2) That the unlawful act: annoyed, injured, or endangered the comfort, repose, health, or safety of others; and

(3) That D&R Excavating Inc., and/or Douglas and Susan Hoffmanns' acts were the proximate cause of damages to King County. Damages may include but are not limited to the following: costs related to the remediation, mitigation and/or removal of the asphalt grindings from the private properties on Vashon Island.

If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for King County on the nuisance claim. On the other hand, if any of these propositions has not been proved, your verdict should be for D&R Excavating Inc., and/ or Douglas and Susan Hoffmann, on the nuisance claim.

Jury Instruction 10.

With respect to ICON's claims against D&R, the Court has ruled that:

1. D&R is in breach of the Subcontract for failing to defend, indemnify, and hold ICON harmless.

2. D&R is contractually required to indemnify, defend, and hold harmless ICON against the King County directives related to D&R's work, including but not limited to D&R's failure to remove the millings as directed by King County and ICON.

Based on this Order, if you find that ICON proved it incurred damages resulting from D&R's breach, then you shall award damages to ICON.

Jury Instruction 18.

The jury returned a verdict finding that D & R had violated KCC

16.82.100(A)(4)(d) and awarded King County damages in the amount of

$12,571.52. The jury awarded ICON damages in the amount of $683,764.81 for

D & R's breach of the duty to defend, indemnify, and hold harmless. The jury

found against D & R on its claim for tortious interference with a business

8

expectancy against King County and its claim for an unpaid balance owed on the subcontract against ICON.[5]

When ICON moved for entry of judgment on the jury verdict, D & R argued that it had no indemnity obligation to ICON because there was no judgment entered on King County's claims against ICON. The trial court rejected this argument and entered judgment against D & R in favor of ICON in the amount awarded by the jury plus prejudgment interest. The trial court also awarded attorney fees and costs to ICON. D & R filed a motion for a new trial, which the trial court denied. D & R appeals.

II

D & R asserts that the trial court incorrectly instructed the jury on the law concerning public nuisances. This is so, it contends, because Washington law does not recognize "nuisance per se," and that, accordingly, King County was required to prove that D & R's disposal of asphalt millings was harmful. We disagree.

This court reviews claims of legal error in jury instructions de novo. Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 863, 419 P.3d 447 (2018). "Jury instructions are sufficient if they (1) allow each party to argue its theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law." City of Bellevue v. Raum, 171 Wn. App. 124, 142, 286 P.3d 695 (2012) (citing Caruso v. Local Union No.

---

[5] Although the trial court ruled on summary judgment that ICON had not breached the subcontract, the jury was nevertheless asked whether ICON owed any sums to D & R. It is not clear from the appellate record why this occurred.

690 of Int'l Bhd. of Teamsters, 107 Wn.2d 524, 529, 730 P.2d 1299 (1987)).

If a jury instruction is legally erroneous, it constitutes reversible error only if it is prejudicial. Fergen v. Sestero, 182 Wn.2d 794, 803, 346 P.3d 708 (2015) (citing Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012)). "If the instruction contains a clear misstatement of law, prejudice is presumed and is grounds for reversal unless it can be shown that the error was harmless." Fergen, 182 Wn.2d at 803. Otherwise, the party claiming error has the burden to demonstrate prejudice. Fergen, 182 Wn.2d at 803.

Jury instruction 9, to which D & R assigns error, reads as follows:

> Any civil violation of King County code is detrimental to the public health, safety and environment and is declared public nuisances.
>
> King County Code Title 16.82.100 A.4.d states that recycled asphalt shall not be used as fill in areas subject to exposure to seasonal or continual perched ground water, in a critical aquifer recharge area or over a sole-source aquifer.
>
> If you find that Third-Party Defendants violated King County Code 16.82.100A.4.d, then you must find that the Third-Party Defendants committed a public nuisance, and that King County has satisfied its burden of proving the first and second propositions found in Instruction No. 10.

Our legislature has defined a "nuisance" as "unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others." RCW 7.48.120. A public nuisance is a nuisance "which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." RCW 7.48.130.

A nuisance per se exists when the legislative authority has declared the

complained-of act to be unlawful. Kitsap County v. Kev, Inc., 106 Wn.2d 135, 138, 720 P.2d 818 (1986); see also Moore v. Steve's Outboard Serv., 182 Wn.2d 151, 156, 339 P.3d 169 (2014). If the plaintiff establishes a nuisance per se, it need not separately prove injury, as the legislative body has already determined that the act is itself injurious to the community. Kev, Inc., 106 Wn.2d at 139 (quoting King County ex rel. Sowers v. Chisman, 33 Wn. App. 809, 819, 658 P.2d 1256 (1983)).

The King County Council, the legislative authority governing King County, adopted KCC 23.02.030(A) in 2008, declaring that "[a]ll civil code violations are hereby determined to be detrimental to the public health, safety and environment and are hereby declared public nuisances." King County's claim of nuisance against D & R was based on D & R's violation of KCC 16.82.100(A)(4)(d). That provision of the code states, "Recycled asphalt shall not be used in areas subject to exposure to seasonal or continual perched ground water, in a critical aquifer recharge area or over a sole-source aquifer." KCC 16.82.100(A)(4)(d). Because the King County legislative authority has declared use of recycled asphalt in critical aquifer recharge areas to be unlawful and declared that such use constitutes an injury to the public, there was no need for King County to separately prove an unlawful act and injury. Jury instruction 9 thus correctly stated the law.

Relying on case law concerning *negligence* per se, D & R contends that Washington no longer recognizes nuisance per se as a valid legal principle. But, as King County points out, the law of negligence has no bearing on the law of

11

nuisances. Unlike negligence per se, neither the legislature nor our Supreme Court have rejected nuisance per se as a controlling legal principle.[6]

Jury instruction 10 also correctly states the law. Jury instruction 10 reads as follows:

> King County has the burden of proving each of the following propositions with respect to the claim of nuisance:
>> (1) That D&R Excavating Inc., Douglas and Susan Hoffmann acted unlawfully; and
>> (2) That the unlawful act: annoyed, injured, or endangered the comfort, repose, health, or safety of others; and
>> (3) That D&R Excavating Inc., and/or Douglas and Susan Hoffmanns' acts were the proximate cause of damages to King County. Damages may include but are not limited to the following: costs related to the remediation, mitigation and/or removal of the asphalt grindings from the private properties on Vashon Island.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for King County on the nuisance claim. On the other hand, if any of these propositions has not been proved, your verdict should be for D&R Excavating Inc., and/or Douglas and Susan Hoffmann, on the nuisance claim.

Parts (1) and (2) of jury instruction 10 directly track the language of RCW 7.48.120, defining the word "nuisance." This instruction is consistent with jury instruction 9, because jury instruction 9 explicitly states that proof of a violation of KCC 16.82.100(A)(4)(d) will automatically satisfy King County's burden under parts 1 and 2 of jury instruction 10. Jury instructions 9 and 10 are not legally erroneous and the trial court did not err by giving them.

### III

D & R asserts that the trial court erred by instructing the jury that it had

---

[6] For this reason, neither jury instruction 9 nor jury instruction 10 are inconsistent with jury instruction 8, as D & R contends.

breached its duty to defend, indemnify, and hold ICON harmless pursuant to the subcontract. This is so, D & R asserts, because it cannot have breached a duty when ICON was never found liable to King County. We disagree.

D & R phrases this issue as a challenge to jury instruction 18. However, jury instruction 18 copies word for word the trial court's order granting summary judgment to ICON. Thus, as ICON rightly points out, D & R's argument is in actuality a challenge to the trial court's ruling on ICON's motion for partial summary judgment on its breach of contract claim. [7]

We review a trial court's order on summary judgment de novo. Boyd v. Sunflower Properties LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016).

"When interpreting an indemnity provision, we apply fundamental rules of contract construction." MacLean Townhomes, LLC v. Am. 1st Roofing & Builders Inc., 133 Wn. App. 828, 831, 138 P.3d 155 (2006). The words in a contract should be given their ordinary meaning and should not be read so as to render other provisions meaningless. MacLean Townhomes, 133 Wn. App. at 831. Additionally, indemnification provisions are to be read as to effectuate the intent of the parties. Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wn.2d 829, 835, 271 P.3d 850 (2012).

The plain language of the subcontract between ICON and D & R is not consistent with D & R's argument that ICON needed to be held liable to King

---

[7] D & R also assigns error to jury instruction 3 and question 4 on the special verdict form. Both the instruction and question merely inform the jury that the trial court had previously ruled that D & R was in breach of the subcontract. Both of these assignments of error are thus also properly deemed a challenge to the partial summary judgment order.

County before it could be in breach of the indemnity provision. Exhibit B to the subcontract reads:

> Subcontractor shall <u>defend, indemnify and hold harmless</u> Contractor and its affiliates and corporate parents, officers, directors, sureties, agents and employees, and any entities to whom Contractor has Indemnification obligations under the Contract ("the Indemnities"), <u>from and against any and all losses, costs, claims (even though such claims may prove to be false, groundless, or fraudulent), demands, penalties, damages, expenses or liabilities, arising from, resulting in any manner directly or indirectly from or connected with or in the course of the performance of the Subcontractor Work</u> or the Subcontractor obligations.

(Emphasis added.) This language contemplates that D & R would defend, indemnify, and hold ICON harmless regardless of whether ICON was held liable by a jury. Indeed, the indemnity clause does not require that a lawsuit be filed at all. The provision mandates that D & R indemnify and hold ICON harmless for "any and all losses," "costs," and "expenses" incurred as the result of D & R's work. This necessarily includes the costs and expenses ICON incurred in removing the asphalt millings that D & R stockpiled in a critical aquifer recharge area in violation of King County Code. See <u>Thomas Ctr. Owners Ass'n v. Robert E. Thomas Tr.</u>, 20 Wn. App. 2d 690, 703, 501 P.3d 608, <u>review denied</u>, 199 Wn.2d 1014 (2022) ("In plain English, 'any and all' means any and all.").

D & R nevertheless asserts that under the common law, an indemnitor need not pay an indemnitee unless and until the indemnitee is found liable to a third party. However, Washington law has long recognized that common law defenses cannot defeat the express language of a contractual indemnification provision. <u>Stocker v. Shell Oil Co.</u>, 105 Wn.2d 546, 549-50, 716 P.2d 306

14

(1986). To hold otherwise "would frustrate the reasonable expectations of the contracting parties and thus interfere with their freedom to contract." Stocker, 105 Wn.2d at 550.

Indeed, D & R's argument was rejected over 50 years ago in N. Pac. Ry. v. Nat'l Cylinder Gas Div. of Chemetron Corp., 2 Wn. App. 338, 467 P.2d 884 (1970). In that case, National Cylinder entered into a contract containing a provision whereby it agreed to defend, indemnify, and hold Northern Pacific harmless for claims against Northern Pacific incurred as the result of National Cylinder's actions. Nat'l Cylinder, 2 Wn. App. at 339. When an employee of National Cylinder sued Northern Pacific for injuries he sustained, Northern Pacific tendered its defense to National Cylinder's insurer. Nat'l Cylinder, 2 Wn. App. at 339. After National Cylinder refused to defend, Northern Pacific settled the employee's claim and filed a breach of contract action against National Cylinder. Nat'l Cylinder, 2 Wn. App. at 340.

National Cylinder argued that because Northern Pacific was not found liable but instead settled with the employee, it could not be obligated to indemnify Northern Pacific. Nat'l Cylinder, 2 Wn. App. at 344. As D & R does here, National Cylinder based this argument on cases concerning common law indemnification. Our learned predecessors rejected that argument, holding that the language of the contract controlled and that, as written, it did not require a finding of liability before National Cylinder was required to indemnify. Nat'l Cylinder, 2 Wn. App. at 344-45. Although the parties could contract to limit the duty to indemnify to only those cases in which a finding of liability was entered,

15

the parties in that case did not do so. <u>Nat'l Cylinder</u>, 2 Wn. App. at 347. In addition, the court held that "the failure of the indemnitor to defend the action when the subject matter of the suit is within the scope of the indemnity agreement is itself a breach of contract and entitles the indemnitee to recover from the indemnitor the amount of any reasonable settlement made in good faith." <u>Nat'l Cylinder</u>, 2 Wn. App. at 345.

As in <u>Nat'l Cylinder</u>, the indemnification clause at issue herein contains no wording that would limit D & R's duty to indemnify to cases in which ICON was found liable. Nor does the indemnification clause limit D & R's duty to indemnify only to sums ICON paid to third parties. Furthermore, as in <u>Nat'l Cylinder</u>, D & R refused to provide conflict-free counsel to ICON, or to pay for ICON's counsel of choice, in an action that pertained to its work under the subcontract, which itself is a breach of contract that entitled ICON to damages. The trial court did not err by entering judgment in favor of ICON on its claim for breach of the duty to defend, indemnify, and hold ICON harmless, nor did it err by informing the jury of its ruling.

IV

D & R next asserts that the trial court erred by dismissing its claim against Fidelity on summary judgment. This is so, it asserts, because it followed the statutory requirements of RCW 39.08.030, which does not include a requirement that the subcontractor complied with all the terms of the subcontract. D & R's argument is without merit.

To establish a viable claim on a bond, the claimant must establish that it is

16

owed a sum for work performed or materials furnished.  Puget Sound Bridge & Dredging Co. v. Jahn & Bressi, 148 Wash. 37, 47, 268 P. 169 (1928).  If the company that furnished the bond is not liable to the claimant, neither is the bond surety.  Tucker v. Brown, 20 Wn.2d 740, 848, 150 P.2d 604 (1944); McChord Credit Union v. Parrish, 61 Wn. App. 8, 13-14, 809 P.2d 759 (1991).

Contrary to D & R's assertion, RCW 39.08.030 does not create an independent cause of action against a bond.  RCW 39.08.030 is a notice statute, outlining the conditions that must be met before a claimant may pursue an action on a bond.  D & R's claim against Fidelity was not dismissed due to a failure to follow procedural rules; it was dismissed because D & R had no viable claim against ICON for sums owed.  Thus, RCW 39.08.030 has no bearing on the merits of D & R's appeal.

D & R did not assign error to the trial court's decision dismissing its claims against ICON, nor does it argue that the trial court erred by doing so.  Similarly, D & R does not assign error to or discuss the jury's verdict finding that ICON did not owe any sums to D & R.  We typically do not review decisions of the trial court to which the appellant has neither assigned error nor discussed in its briefing, RAP 10.3(a)(4); Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992), and we will not further do so here.

Because D & R has no claim against ICON, it cannot have a claim against Fidelity.  The trial court did not err by dismissing D & R's claim against the surety.

V

Both D & R and ICON request an award of fees pursuant to RAP 18.1 and

17

the terms of the subcontract between them. Paragraph 16.9 of the subcontract between ICON and D & R states that "[i]f Contractor should require the services of an attorney . . . in order to give effect to any of the provisions hereof . . . then Subcontractor shall pay all of Contractor's fees and disbursements associated with such services, including fees and disbursement of Contractor's counsel." We hereby award ICON its attorney fees and costs on appeal in accordance with this provision. Upon proper application, a commissioner of our court will enter an appropriate award.

Affirmed.[8]

_Dwyer, J._

WE CONCUR:

_Chung, J._        _Mann, J._

---

[8] Weeks after oral argument (and the case being submitted to the court for decision), and at a point in time after this opinion had been drafted and placed in circulation to the nonauthoring members of the panel, appellants filed a motion seeking either leave to file supplemental briefing or an order by which the court agreed to truncate its analysis so as to conform with the litigants' analyses of the issues presented. This motion is denied.

Supplemental briefing will not assist the panel. Furthermore, as always, we are guided by our Supreme Court's admonition that a court's "obligation to follow the law remains the same regardless of the arguments raised by the parties before it." State v. Quizmundo, 164 Wn.2d 499, 505-06, 192 P.3d 342 (2008). In this opinion, we resolve only the claims of error assigned by the parties and do so only with resort to the established trial court record. If, during our de novo review of the trial court's pretrial summary judgment ruling, we have placed emphasis on different words in an exhibit than were emphasized by either or both of the litigants, that is the product of our analyses—not the introduction of a new "issue" into the litigation.