[No. 1060-1.    Division One—Panel 1.    December 11, 1972.]

DENNIS C. KARNATZ, *Plaintiff*, v. MURPHY PACIFIC
CORPORATION *et al.*, *Appellants*, HOWARD S. WRIGHT CO.,
*Respondent.*

*Merrick, Hofstedt, Schumm & Lindsey* and *James M. Lindsey, Jr.*, for appellants.

*Williams, Lanza, Kastner & Gibbs* and *Joseph J. Lanza*, for respondent.

JAMES, J.—Pacific Car and Foundry Company and Isaacson Structural Steel, joint venturers (hereinafter referred to as Pacific Car), The Travelers Indemnity Company, and Murphy Pacific Corporation appeal a judgment in favor of Howard S. Wright Company on cross and third-party

claims for attorneys' fees and costs incurred in defending a suit by Dennis Karnatz.

Wright was general contractor for construction of the Seattle First National Bank Building. Westinghouse Electric Corporation was the elevator subcontractor, and Pacific Car was the structural steel subcontractor. Murphy Pacific was subcontractor of Pacific Car for steel erection. Safeco Insurance Company was Wright's general liability carrier. Liberty Mutual Insurance Company was insurer for Westinghouse, and Travelers was insurer for Pacific Car. Home Insurance Company was insurer for Murphy Pacific.

Westinghouse's contract with Wright contained a clause wherein Westinghouse agreed to indemnify and save Wright harmless

> from and against any and all suits, claims, actions, losses, costs, penalties, and damages, *of whatsoever kind or nature, including attorney's fees,* arising out of, in connection with or incident to the Subcontractor's *performance* of this Subcontract.

(Italics ours.) Murphy Pacific's subcontract with Pacific Car contained a clause wherein Murphy Pacific agreed to indemnify and hold Wright harmless

> from and against any and all suits, claims, actions, losses, costs, penalties, and damages, *of whatsoever kind or nature, including attorney's fees,* arising out of Subcontractor's *negligence* in connection with, or incident to the Subcontractor's negligent acts in the performance of this Subcontract.

(Italics ours.)

Karnatz, an employee of Westinghouse, was injured during construction. He filed a claim against Murphy Pacific and Wright, alleging that the negligence of both contributed to cause his injuries. Safeco assumed Wright's defense and in turn, tendered it to Murphy Pacific, Pacific Car, Westinghouse, Travelers and Liberty Mutual. When all refused to defend, Wright, relying upon the various indemnity agreements, filed cross and third-party actions against all three subcontractors for indemnity and costs of defense.

Murphy Pacific filed a cross claim alleging negligence on the part of Wright and a third-party complaint alleging negligence on the part of Westinghouse. Murphy Pacific sought indemnity from Westinghouse in the event of a judgment against itself alone and contribution in the event that it (Murphy Pacific) settled with Karnatz or in the event that Karnatz obtained a judgment against both Wright and Murphy Pacific.

Thereafter, Westinghouse's insurer, Liberty Mutual, assumed Wright's defense, and Wright's third-party complaint against Westinghouse and Liberty Mutual was dismissed. Home Insurance Company assumed the defense of Karnatz' claim in behalf of its insured, Murphy Pacific, and before trial, settled with Karnatz. Karnatz' suit was dismissed with prejudice as to all parties. Murphy Pacific then voluntarily dismissed its third-party complaint against Westinghouse for indemnity or contribution so that it could reassert that claim in federal court.

The case proceeded to trial on Wright's cross complaint against Pacific Car and Murphy Pacific to recover the costs of defense. By pretrial stipulation it was agreed that:

> Any recovery of expense of the defense of Howard S. Wright now sought in this cross claim against Murphy Pacific and this third party action against Pacific Car and Travelers is to be paid to [the attorney for Liberty Mutual, Westinghouse's insurer] and will not be charged again against Howard S. Wright or Liberty Mutual.

The trial judge issued a memorandum opinion prior to the entry of formal findings and conclusions. In it he concluded that when Murphy Pacific voluntarily dismissed its third-party complaint against Westinghouse, it also dismissed its claim for contribution to the costs of Wright's defense. The memorandum opinion states: "Since the contribution claim is not now presented to the court, further comment thereon is inappropriate."

The trial judge found as a fact that the negligence of one of Murphy Pacific's employees was a proximate cause of Karnatz' injuries. The trial judge concluded that:

When Westinghouse undertook the defense of "Wright" pursuant to its contract of indemnity, it became subrogated to all the rights of "Wright" to enforce the obligations of "Pacific Car", "Murphy", and "Travelers" under their respective contracts of indemnity and insuring agreement. Liberty Mutual Insurance Company, as the insurance carrier of Westinghouse, stands in the shoes of its insured, and may now enforce these rights for indemnity.

Conclusion of law No. 4. He awarded Wright judgment against Murphy Pacific, Pacific Car, and Travelers for the agreed sum of $5,015.40.

By the stipulation above noted, the parties recognized that Westinghouse is the real party in interest for Wright's claim. The contest, therefore, is between Wright's two indemnitors, Westinghouse and Murphy Pacific.

It is Murphy Pacific's position that under the factual pattern here presented, the contractual obligations of Westinghouse and Murphy Pacific to indemnify Wright for the cost of defending Karnatz' suit placed them on an equal footing, thereby nullifying any subrogation right of either and bringing into operation the doctrine of contribution.

On the other hand, Westinghouse asserts that Murphy Pacific's obligation to finance Wright's defense was *primary,* and that Westinghouse should therefore be subrogated to the position of Wright and recover all of its costs and attorneys' fees incurred in the defense of Karnatz' claim.

It must first be recognized that we are concerned only with the obligation to finance Wright's *defense* of Karnatz' suit. Indemnity, in the event of judgment against Wright, is *not* the issue. That question was transferred to federal court.

The trial judge was confronted with a confusing welter of claims and cross claims. We conclude that he erred in determining that Murphy Pacific's claim of right to contribution for costs of defense followed its cross claim against Westinghouse for indemnity into federal court. By the terms of their agreements with Wright, both Westinghouse

and Murphy Pacific were obligated to finance Wright's defense under certain conditions. This obligation is independent of the obligation to indemnify Wright in the event of judgment.

We must therefore consider Westinghouse's claim that Murphy Pacific had the *primary* duty to finance Wright's defense. If Murphy Pacific's obligation was primary, it must bear the entire cost of Wright's defense. *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 416 P.2d 468 (1966).

To determine if Murphy Pacific's duty is primary, we compare its contractual obligation with that undertaken by Westinghouse.

> [I]ndemnity clauses of construction contracts are to be viewed realistically as efforts by business men to allocate as between them the cost or expense of the risk of accidents apt to arise out of construction projects on a fairly predictable basis, rather than upon the generally debatable and indeterminate criteria as to whose negligence, if any, the accident was caused by, and to what degree. [*Buscaglia v. Owens-Corning Fiberglas*, 68 N.J. Super. 508, 515, 172 A.2d 703 (1961).]

*Continental Cas. Co. v. Municipality of Metro. Seattle*, 66 Wn.2d 831, 835, 405 P.2d 581 (1965).

Karnatz claimed that Murphy Pacific's negligence was a proximate cause of his injuries. Murphy Pacific was obligated to finance Wright's defense in all suits "arising out of, in connection with, or incident to" its "negligent acts." Murphy Pacific was bound by its contract to finance Wright's defense.

Karnatz was injured while engaged in performing work under Westinghouse's subcontract. Westinghouse was obligated to finance Wright's defense of all suits "arising out of, in connection with or incident to" Westinghouse's performance of its contract. Was Westinghouse bound to finance Wright's defense?

In *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970), the subcontractor agreed to

indemnify the general contractor in the precise language of Westinghouse's undertaking. An employee of the subcontractor sued the general contractor, alleging that he was injured as a result of the general contractor's negligence. The general contractor tendered the defense to the subcontractor. Concerning the effect of the indemnity clause, the court said on page 1038:

> As we view this indemnity clause, it would be most difficult to assemble words which describe a more comprehensive and all-inclusive intent by the indemnitor to indemnify the indemnitee for all losses suffered by the indemnitee, "of whatsoever kind or nature," so long as they had some connection with the indemnitor's performance of the subcontract.

In holding that the subcontractor was bound to indemnify, the court said:

> Defendant's employee at the time of injury was engaged in performing work under the subcontract. He was atop a utility pole installing the electrical system. Had he not been so engaged, he would not have been injured. His injuries, and plaintiff's subsequent loss arose out of, in connection with, or incidental to defendant's performance of the subcontract.

*Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra* at 1037. A similar indemnity clause received the same construction in *Northern Pac. Ry. v. National Cyl. Gas Div. of Chemetron Corp.*, 2 Wn. App. 338, 467 P.2d 884 (1970).

Westinghouse was also bound by its contract to finance Wright's defense.

■ The principle or doctrine of contribution is one of equality in bearing a common burden. 18 Am. Jur. 2d *Contribution* § 1 (1965). One who has paid the whole of a *common* obligation is entitled to recover one-half of his payment from one who is *equally* obligated. *Hanson v. Hanson*, 55 Wn.2d 884, 350 P.2d 859 (1960). Although the doctrine of contribution is founded in equity and not upon contract, 18 Am. Jur. 2d *Contribution* § 1 (1965), it applies with respect to contractual obligations. Surety and indemnity contracts which result in duplicate coverage of a single

risk are frequently the subject of equity's concern for equality.

> The right to contribution is predicated upon the principle that all insurers are equally liable for the discharge of a common obligation, and arises even though, for the obligation involved, the sureties are bound by separate instruments.

(Footnotes omitted.) 16 G. Couch, *Insurance* § 62.150 (2d ed. R. Anderson 1966).

Westinghouse and Murphy Pacific were contractual indemnitors of a common obligation, *i.e.*, the cost of the defense of Karnatz' suit. Neither contract contemplated the existence of the other, or provided for apportionment of liability for costs in the event of multiple coverage. It follows that neither indemnitor had the *primary* obligation to finance Wright's defense. Under the doctrine of contribution, each should bear one-half of the cost. Accordingly, the judgment is reversed and remanded for the entry of appropriate judgment.

WILLIAMS and CALLOW, JJ., concur.