226 P.3d 159 (2010)
Keith G. CARPENTER and Julie B. Carpenter, individually and as husband and wife, Respondents,
v.
REMTECH, INC., a Washington corporation, Defendant,
Dustcoating, Inc., a Minnesota corporation, and Larry D. Johnson and Kathleen L. Johnson, individually and as husband and wife, Appellants.
No. 27822-1-III.
Court of Appeals of Washington, Division 3.
February 23, 2010.
*160 Laura J. Black, Lukins & Annis, P.S., Spokane, WA, Henry Edward Stiles II, Attorney at Law, Spokane, WA, for Appellants.
Jeffrey Lawrence Supinger, Attorney at Law, Spokane, WA, for Respondents.
SWEENEY, J.
¶ 1 This appeal follows a successful suit for contribution by one guarantor, Keith G. and Julie B. Carpenter, against another, Larry D. and Kathleen L. Johnson, on an agreement to guarantee a construction bond (a guaranteed indemnity agreement). Both had signed a guaranteed indemnity agreement by which they agreed to indemnify a bonding company, Hartford Fire Insurance Company, for any payments that company made pursuant to the bond. The problem is the trial court required contribution based on an indemnity agreement (the June 8, 1999 agreement) that had been used to secure bonding to bid a discrete project (The Manchester Project). But the Carpenters paid the Hartford based on another indemnity agreement (the May 20, 1999 agreement) that had been used to secure bonding for a totally separate project (the McCormick & Baxter Project). The Johnsons had no interest in the McCormick & Baxter Project and had not signed the guaranteed indemnity agreement to secure the bond for that project. We conclude, then, that the Carpenters had no claim in equity for contribution against the Johnsons under either agreement, and we reverse the trial court's judgment awarding contribution.

FACTS
¶ 2 Remtech, Inc., and its owners, Keith and Julie Carpenter, signed a general indemnity agreement on May 20, 1999, to secure the bonding necessary to bid on a project in the state of Oregon called the McCormick & Baxter Project. The indemnity agreement requires payment to the bonding company, Hartford Fire Insurance Company, in the event Hartford had to pay out of its construction bond. Larry and Kathleen Johnson and their company, Dustcoating, Inc., did not sign the general indemnity agreement, the May 20, 1999 agreement used to secure bonding for the McCormick & Baxter Project, and had no interest in that project, financial or otherwise.
¶ 3 Dustcoating and the Johnsons did, however, sign a separate general indemnity agreement on June 8, 1999, to help Remtech and the Carpenters secure the necessary bonding to bid on a Corps of Engineers project known as the Manchester Project. The plan was that the Johnsons and Dustcoating would have significant subcontracts on the Manchester Project. The Manchester Project, however, was canceled. And so, of course, no claims were ever made against the Manchester Project bond or the June 8, 1999 general indemnity agreement.
¶ 4 Remtech failed to pay two subcontractors on the McCormick & Baxter Project, however, and Hartford stepped in and paid those obligations. Hartford then sued the Carpenters and Remtech in San Juan County Superior Court for the sums it paid out on its bond. Hartford's complaint specifically alleged that the Carpenters and Remtech were *161 obligated because of the May 20, 1999 general indemnity agreement. The Carpenters paid the full amount of Hartford's claim. Hartford then signed a settlement agreement and dismissed its suit. The Carpenters' settlement agreement with Hartford specifically referred to the McCormick & Baxter Project and to "a" general indemnity agreement. Neither Dustcoating nor the Johnsons was party to any of the San Juan County proceedings.
¶ 5 The Carpenters then sued the Johnsons and Dustcoating for contribution under the June 8, 1999 general indemnity agreement the agreement used to secure bonding for the Manchester Project. They claimed that the unqualified language used in both agreements"will indemnify ... from all loss ... because of having furnished any Bond"obligated the Johnsons to contribute to the settlement of the claims against the bond for the McCormick & Baxter Project. Clerk's Papers (CP) at 23, 62. The trial court agreed with the Carpenters that the categorical language used in these bonds gave rise to an equitable cause of action for contribution and required the Johnsons and Dustcoating to pay the Carpenters and Remtech a portion of its settlement with Hartford.
¶ 6 The Johnsons and Dustcoating appeal.

DISCUSSION
¶ 7 The Carpenters argue, on good authority, that contractual co-obligors have a right of contribution over and against one another when they are equally liable for the same debt. Sound Built Homes, Inc. v. Windermere Real Estate/South, Inc., 118 Wash.App. 617, 633-34, 72 P.3d 788 (2003). They are correct. But that contention begs the essential question in this dispute: are these parties equally liable on the same debt? And for us, they are not.
¶ 8 The essential facts here are undisputed. The question of whether the Carpenters are entitled to contribution is, therefore, a question of law that we will review de novo. Bank of Am., NA v. Prestance Corp., 160 Wash.2d 560, 564, 160 P.3d 17 (2007).
¶ 9 Two concepts structure our analysis here: the distinction between law and equity and the "context rule." First, this is a suit in equity for contribution; it is not a suit in law on a contract. The distinction is important. A suit for contribution invokes the equitable powers of the court. Appleford v. Snake River Mining, Milling & Smelting Co., 122 Wash. 11, 15, 210 P. 26 (1922). A suit on a contract does not. Karnatz v. Murphy Pac. Corp., 8 Wash.App. 76, 81, 503 P.2d 1145 (1972).
¶ 10 Contribution, and specifically the right to contribution between co-guarantors, then, is a right based only in equity. Appleford, 122 Wash. at 15, 210 P. 26. It is not a legal right, unless, of course, the parties here specifically agreed to contribution. They did not.
¶ 11 The right of contribution arises from the court's willingness to imply an obligation to contribute. Id. The idea is that the guarantors "impliedly agreed that if there should be any liability each would contribute his just portion." Id. Underlying this implied agreement is the assumptionan equitable assumption that the instrument out of which the right to contribution should arise was paid or satisfied by one guarantor for the benefit of both guarantors. Id. So underlying this equitable right is the condition that the party against whom contribution is sought was obligated to pay the principle debt in the first place. Id.
¶ 12 The second concept that underlies our analysis is this state's so-called "context rule." Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990). That rule provides an analytical framework to interpret the language of these general indemnity agreements to determine the intent of these parties when they signed the agreement. Id. To do so, we view the contract as a whole. Id. We include "the subject matter and objective of the contract, all circumstances surrounding its formation, the subsequent acts and conduct of the parties, statements made by the parties in preliminary negotiations, and usage of trade and course of dealings." Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 895, 28 P.3d 823 (2001). This approach permits us to then "discover *162 the intent of the parties based on their real meeting of the minds, as opposed to insufficient written expression of their intent." Id. Neither general indemnity agreement here refers to a specific bond or project. We must look, then, to not only the indemnity agreements but also the conduct of the parties and the context of these agreements. Id.
¶ 13 We turn first to the two separate general indemnity agreements because one or both of those agreements imposed, or did not impose, upon the Johnsons the obligation to pay Hartford in the first place. And it is that obligation that generates the Carpenters' right to contribution. Appleford, 122 Wash. at 15, 210 P. 26.
¶ 14 It is undisputed that Hartford sued on a specific agreement (the May 20, 1999 general indemnity agreement). That agreement secured bonding for a specific projectthe McCormick & Baxter Project. The Johnsons and Dustcoating did not sign and had no obligations under the May 20, 1999 general indemnity agreement, and they had nothing to do with the McCormick & Baxter Project. Indeed, even Hartford concluded that the agreements were project-specific and refused to sue on the June 8, 1999 general indemnity agreement that the Johnsons had signed. CP at 13-14. And, so, we conclude that the Johnsons never incurred the obligation to pay Hartford here because Hartford never sued to recover on any agreement the Johnsons were parties to; nor, for that matter, did Hartford sue to recover moneys paid on any project the Johnsons had any interest in, financial or otherwise.
¶ 15 The Carpenters insist, nonetheless, that their settlement agreement with Hartford extinguished any and all potential liability under any general indemnity agreement. And this, they argue, supports their equitable claim for contribution. Of course, the trial court agreed with them. But even were we to accept that the settlement agreement could give rise to an equitable claim for contribution (and we do not), we would reject that argument here.
¶ 16 The San Juan County Superior Court pleadings are helpful in undermining the Carpenters' argument. Hartford's complaint made claims for recovery under the May 20, 1999 general indemnity agreement and only that agreement. The complaint did not make claims under the June 8, 1999 general indemnity agreement. The wording of the settlement agreement between Hartford and the Carpenters also undermines the Carpenters' argument. The agreement specifically referred to the McCormick & Baxter Project. CP at 279-80. It specifically referred to the claims of Remtech's subcontractors on that job. And it referred to the specific suit Hartford filed in San Juan County Superior Court, Cause No. 07-2-05048-6, to recover under the May 20, 1999 general indemnity agreement. Finally, the settlement agreement refers only to "a" (as in a single) general indemnity agreement, not several. CP at 279-80.
¶ 17 That the ultimate settlement agreement between the Carpenters and Hartford may have eliminated any potential claims Hartford had against the Johnsons and Dustcoating simply does not bear upon the reality that Hartford had no claims against the Johnsons and Dustcoating under the May 20, 1999 general indemnity agreement in the first place. The Johnsons and Dustcoating did not sign that general indemnity agreement, received no financial benefit from it, and, in short, had nothing to do with it. And Hartford sued and collected under only the May 20, 1999 general indemnity agreement.
¶ 18 By way of supplemental authority, the Carpenters suggest that it is not material that the obligations were created by separate agreements at different times. Schoenfeld v. Neher, 428 F.2d 152 (10th Cir.1970); Schoenfeld v. Neher, 453 F.2d 896 (10th Cir.1972). That authority is easily distinguished. Those cases involved a cosurety obligation on the same indebtedness. Here, the indebtedness arose out of the McCormick & Baxter Project, which again, the Johnsons and Dustcoating had nothing to do with. The context surrounding the two general indemnity agreements reflect obligations on separate jobs. And the equitable right of contribution does not support a finding of equal liability on obligations not contemplated by the parties.
*163 ¶ 19 The idea underlying the right to equitable contribution is the fairness inherent in equally bearing a common burden. Karnatz, 8 Wash.App. at 81, 503 P.2d 1145. It is not fair for one who has paid in full a common obligation, not to be able to collect half of that payment from someone who was equally obligated. Id. at 81-82, 503 P.2d 1145. For us, those equitable principles are not implicated here.
¶ 20 In sum, the Carpenters were sued on, Hartford collected on, and the Carpenters paid on a different general indemnity agreement than the one on which they now base their equitable right to contribution. We conclude that this is not equitable and they are, therefore, not entitled to contribution in equity.
¶ 21 We reverse the trial court and dismiss the suit.
I CONCUR: BROWN, J.
KULIK, C.J., (dissenting).
¶ 22 The right of contribution among sureties exists where the sureties have common liability for the same debt and one surety is required to pay the whole amount. Here, Dustcoating, Inc., and Larry and Kathleen Johnson (Dustcoating defendants) appeal a summary judgment against them, contending they are not cosureties with Remtech, Inc. (Remtech) and Keith and Julie Carpenter under an indemnity agreement with Hartford Fire Insurance Company (Hartford). Because the Dustcoating defendants and the Carpenters are liable under the indemnity agreement for the same continuing debt that is not limited on a project-specific basis, I conclude the Dustcoating defendants and the Carpenters are cosureties, and the Carpenters have a right of contribution against the Dustcoating defendants. Therefore, I would affirm the trial court's summary judgment in favor of the Carpenters. Accordingly, I respectfully dissent.
¶ 23 The June 8, 1999 general indemnity agreement (GIA) requires that Dustcoating, Remtech, the Carpenters, and the Johnsons
will indemnify and hold the Surety harmless from all loss, liability, damages and expenses ... which the Surety incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of any indemnitor to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of this Agreement.
Clerk's Papers (CP) at 62 (emphasis added).
¶ 24 This provision is central to the dispute here. The trial court agreed with the Carpenters that the June 8, 1999 GIA applies to all bonds. I agree with the majority that neither the May 20, 1999 nor the June 8, 1999 GIA refers to a specific bond or project. However, the majority then looks at the conduct of the parties and the context of the agreements and concludes the GIAs are project specific. But the GIAs do not say that, and Dustcoating did not agree to limit its obligation to any specific project. Dustcoating could have avoided liability on this project by including a limitation in the GIAs or by giving timely notice of termination to Hartford. It did neither.
¶ 25 Significantly, section XV of the June 8, 1999 GIA requires the indemnitor to notify Hartford of any desire to have no exposure as to bonds not yet written. The Dustcoating defendants did not ask Hartford to relieve them of their indemnity obligations until July 3, 2007, more than seven years after signing the agreement.
¶ 26 The majority and the Dustcoating defendants rely, in part, on the declaration of Rick Levesque to establish a project specific agreement. In his declaration, Mr. Levesque states that
[i]t was Hartford's position that the 6/8/99 GIA signed by Dustcoating and the Johnsons was a "project-specific" general indemnification agreement for the Manchester Project, that neither the Johnsons nor Dustcoating intended to assume indemnification liability for the McCormick & Baxter Project through execution of the 6/8/99 GIA, and that Hartford did not intend to take the Johnsons' indemnity for the McCormick & Baxter Project through the 6/8/99 GIA.
CP at 13-14. Mr. Levesque also stated that Hartford received indemnification only under the May 20, 1999 GIA. But Mr. Levesque did *164 not work for Hartford prior to April 2004 and had no firsthand knowledge of the May 20 or June 8, 1999 negotiations. Mr. Levesque conceded that he had never spoken with the Hartford underwriter who handled the underwriting of Remtech in 1999 and that his understanding of Hartford's intent was based solely on a Hartford underwriter, Scott Alderman.
¶ 27 Contradicting Mr. Levesque, Steve Allsop, the actual underwriter for the Remtech account in 1999, stated that it was Hartford's "intent for the General Indemnity Agreement dated June 8, 1999 to govern all bonds issued by The Hartford [for Remtech] after June 8, 1999." CP at 182.
¶ 28 The Dustcoating defendants acknowledge that no specific indemnity agreement is referenced in the San Juan County lawsuit settlement agreement. To settle the San Juan County lawsuit, the Carpenters paid Hartford $287,360.22 under an agreement that read, in part:
The Hartford hereby unconditionally releases Carpenters from all liability arising out of The Hartford's settlement and payment of the claims [asserted by Munitor and Global Diving].
CP at 279 (emphasis added).
¶ 29 "The right to contribution is distinct from the contract that expresses the relation between the sureties and the creditor of their principal." 74 AM.JUR.2D Suretyship § 172 (2009). This right is not based upon the instrument binding the cosureties to the creditor. Id. Instead, the right of contribution among cosureties is based on equitable principles. More specifically, "[t]he right to contribution is not based upon the instrument on which the guarantors have become liable, but is based upon the idea that, when the guarantors signed such instrument, they impliedly agreed that, if there should be any liability, each will contribute his just portion." Appleford v. Snake River Mining, Milling & Smelting Co., 122 Wash. 11, 15, 210 P. 26 (1922). Because the Carpenters are cosureties who paid the obligation, the doctrine of contribution allows them to collect from their cosureties any amount paid over their share. The San Juan County settlement does not change Dustcoating's liability under the GIAs.
¶ 30 The Dustcoating defendants and the Carpenters are cosureties, and the Carpenters have a right of contribution against the Dustcoating defendants. I would affirm the trial court's grant of summary judgment to the Carpenters.